UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                                          :
GARY ANDERSON, as the Personal                            :
Representative of the Estate of Howard                    :
Anderson,                                                 :
                                                          :
                  Plaintiff,                              :
                                                          :
          - against -                                     :
                                                          :
AT&T CORP., CUBAN AMERICAN                                :
TELEPHONE AND TELEGRAPH COMPANY,                          :
and JPMORGAN CHASE BANK, N.A.,                            :
                                                          :
                  Garnishees.                             :
                                                          :
———————————————————————— x
                                                          :    07 Civ. 7974 (VM)
JPMORGAN CHASE BANK, N.A.,                                 :
                                                          :
          Garnishee-Respondent and                        :
          Third-Party Petitioner,                         :
                                                          :
          - against -                                     :
                                                          :
GARY ANDERSON, as the Personal                            :
Representative of the Estate of Howard                    :
Anderson,                                                 :
                                                          :
          Plaintiff-Petitioner and                        :
          Adverse Claimant-                                :
          Respondent,                                     :
                                                          :
          and                                            :
                                                          :
AT&T CORP., and CUBAN AMERICAN                             :
TELEPHONE AND TELEGRAPH COMPANY,                           :
                                                          :
          Garnishee-Respondents                           :
          and Adverse Claimant-                            :
          Respondents,                                    :
                                                          :
          and                                            :
                                                          :

JEANETTE HAUSLER as Successor Personal          :
Representative of the Estate of ROBERT OTIS      :
FULLER, ("BOBBY FULLER"), Deceased, on          :
behalf of THOMAS CASKEY as Personal             :
Representative of the Estate of LYNITA           :
FULLER CASKEY, surviving daughter of            :
ROBERT OTIS FULLER, The ESTATE OF               :
ROBERT OTIS FULLER, FREDERICK                   :
FULLER, FRANCES FULLER, GRACE                   :
LUTES, JEANNETTE HAUSLER AND IRENE              :
MOSS,                                           :
                                                :
                Adverse Claimant-        :
                Respondent,              :
                                                :
    and                                         :
                                                :
ANA MARGARITA MARTINEZ,                         :
                                                :
                Adverse Claimant-        :
                Respondent,              :
                                                :
    and                                         :
                                                :
THE REPUBLIC OF CUBA,                           :
                                                :
                Adverse Claimant-        :
                Respondent.              :
                                                :
――――――――――――――――――――――――――  x

## ANSWER TO PETITION FOR TURNOVER PROCEEDING
## AND THIRD-PARTY PETITION

      JPMorgan Chase Bank, N.A. ("JPM Chase"), which is solely a stakeholder in this

proceeding, alleges as follows, by its attorneys Davis Polk & Wardwell, for its Answer to

the Petition for Turnover Proceeding of Gary Anderson, as the Personal Representative of

the Estate of Howard Anderson ("Anderson"), and for its Third-Party Petition pursuant to

2

Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking

Law:

### Introduction and Procedural History

1.      Admits that Anderson styles his pleading in this proceeding as a Petition

for a Turnover Proceeding pursuant to Fed. R. Civ. P. 69(a) and CPLR §§ 5225(b) and

5227 ("Petition for Turnover").

2.      Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 2 of the Petition, including footnote 1 thereto.

3.      Admits, upon information and belief, the allegations contained in the first

sentence of paragraph 3 of the Petition for Turnover, and denies information or belief as

to the truth of the allegations contained in the second sentence of paragraph 3.

4.      Admits, upon information and belief, the allegations contained in the first

and third sentences of paragraph 4 of the Petition for Turnover, alleges that the

allegations contained in the second sentence of paragraph 4 constitute an assertion of law

as to which no responsive pleading is required, but denies such allegations.

5.      As to paragraph 5 of the Petition for Turnover, there is no paragraph 5.

6.      Admits the allegations contained in the first and second sentences of

paragraph 6 to the Petition for Turnover, but denies knowledge or information sufficient

to form a belief as to the truth of the allegations contained in the third sentence of

paragraph 6.

7.      Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in the first sentence of paragraph 7 of the Petition for

Turnover, and refers to the Orders of this Court referred to in the second sentence of paragraph 7 for the terms, conditions and effect thereof.

8.      Denies the allegations contained in paragraph 8 of the Petition for Turnover, and refers to the writ, to Petitioner's prior turnover proceeding, and to the final Decision and Order of this Court in Case No. 05 Civ. 7214 (VM) (the "McCarthy Decision and Order") for the terms, conditions and effect thereof.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Petition for Turnover.

10.     As to paragraph 10 of the Petition for Turnover, there is no paragraph 10.

### Jurisdiction and Venue

11.     Admits the allegations contained in paragraph 11 of the Petition for Turnover.

12.     Admits the allegations contained in paragraph 12 of the Petition for Turnover.

13.     Admits the allegations contained in paragraph 13 of the Petition for Turnover.

### The Parties

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Petition for Turnover.

15.     Denies the allegations contained in paragraph 15 of the Petition for Turnover, except admits that garnishee-defendant and third-party petitioner JPM Chase is a national banking corporation organized under the laws of the United States which maintains offices in New York, New York, admits further that JPM Chase is named in its

4

capacity as the holder of deposit accounts located in New York that contain assets

blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515, against

which Petitioner's predecessor directed the U.S. Marshal to levy, admits further that

certain such accounts were thereafter the subject of the turnover proceeding that resulted,

in part, in the McCarthy Decision and Order, and admits finally that the New York

branch office of JPM Chase is a proper garnishee of the accounts in question pursuant to

CPLR § 5201.

    16.    Denies the allegations contained in paragraph 16 of the Petition for

Turnover, except admits, upon information and belief, that defendant-garnishee AT&T

Corp. ("AT&T") maintains offices in New York, New York, and otherwise alleges that

the allegations contained in the second sentence of paragraph 16 constitute an assertion of

law as to which no responsive pleading is required, but denies such allegations.

    17.    Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in the first sentence of paragraph 17 of the Petition for

Turnover, and alleges that the allegations contained in the second sentence of paragraph

17 constitute an assertion of law as to which no responsive pleading is required.

    18.    Denies the allegations contained in the first sentence of paragraph 18 of

the Petition for Turnover, except admits that The Republic of Cuba is a foreign state

within the meaning of the U.S. Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §

1602 *et seq.*, denies knowledge or information sufficient to form a belief as to the

allegations contained in the second sentence of paragraph 18, and otherwise alleges that

the allegations contained in the third sentence constitute an assertion of law as to which

no responsive pleading is required, but denies such allegations.

### As to the Allegations Concerning Petitioner's Proceeding for Turnover of Personal Property in Which the Judgment Debtor Has an Interest

19.    Acknowledges that Plaintiff-Petitioner purports to bring its special

proceeding pursuant to Fed. R. Civ. P. 69(a) and N.Y. CPLR §§ 5225(b) and 5227

seeking turnover of deposits in which The Republic of Cuba has an interest,

acknowledges that Plaintiff-Petitioner purports to seek execution against the deposits in

question pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L.

107-297, Title II, § 201(a), Nov. 26, 2002, 116 Stat. 2337 ("TRIA"), refers to TRIA for

the terms and conditions thereof, and otherwise alleges that the allegations contained in

paragraph 19 of the Petition for Turnover require no responsive pleading, but denies such

allegations.

20.    Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 20 of the Petition for Turnover.

21.    Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 21 of the Petition for Turnover.

22.    Denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 22 of the Petition for Turnover, except admits

that amounts deposited in the "AT&T Long Lines Dept. Account" (Account Number

G00875) (the "AT&T Long Lines Account") accrue interest that is credited to the

account from time to time.

6

23.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Petition for Turnover, except admits that amounts deposited in the "Florida Land Sale Account" (Account Number G00882) (the "Florida Land Sale Account") accrue interest that is credited to the account from time to time (the AT&T Long Lines Account and the Florida Land Sale Account are referred to collectively as the "AT&T/CATT Accounts" or the "Accounts").

24.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Petition for Turnover.

25.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Petition for Turnover.

26.    Admits the allegations contained in paragraph 26 of the Petition for Turnover.

27.    Admits the allegations contained in paragraph 27 of the Petition for Turnover.

28.    Admits the allegations contained in paragraph 28 of the Petition for Turnover.

29.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Petition for Turnover.

30.    Acknowledges that, pursuant to paragraph 30 of the Petition for Turnover, Plaintiff-Petitioner seeks turnover of the "currently accrued and future accumulation of tax liability" of the Cuban American Telephone and Telegraph Company ("CATT") to

The Republic of Cuba, and otherwise alleges that the allegations contained in paragraph 30 otherwise require no responsive pleading, but denies such allegations.

31.    Admits the allegations contained in the first sentence of paragraph 31 of the Petition for Turnover, and acknowledges that Plaintiff-Petitioner alleges in the second sentence of paragraph 31 that it seeks execution against the blocked assets of The Republic of Cuba that are contained in the AT&T/CATT Accounts, and otherwise alleges that the allegations contained in the second sentence of paragraph 31 require no responsive pleading, but denies such allegations.

32.    Alleges that paragraph 32 of the Petition for Turnover, in its preamble and in subparagraphs (a), (b), (e) and (f), contains allegations of legal conclusion as to which no responsive pleading is required, and with respect to the allegations contained in subparagraphs (c) and (d) of paragraph 32, denies knowledge or information sufficient to form a belief as to the truth of such allegations.

## FOR ITS THIRD-PARTY PETITION

33.    Garnishee-Respondent and Third-Party Petitioner JPM Chase brings this Third-Party Petition, which commences a proceeding in the nature of interpleader, pursuant to Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking Law, because it has been placed on notice that there are several adverse claimants to all or some portion of the funds credited to deposit accounts on the books of its New York branch office, including, without limitation, the AT&T/CATT Accounts, that are blocked pursuant to the provisions of the Cuban Assets Control Regulations, 31 C.F.R. Part 515.

34.     As described more fully below, the adverse claimants in question (referred to collectively as the "Adverse Claimants" or the "Adverse Claimant-Respondents") are

(a)     Petitioner Anderson, as the alleged Personal Representative of the Estate of Howard Anderson and in that capacity the purported successor to Dorothy Anderson McCarthy, who was the plaintiff-petitioner on behalf of the Estate of Howard Anderson in McCarthy v. The Republic of Cuba, Case No. 18 MS 0302 (Transcript of Registered Judgment No. 05-1005) (the "McCarthy Turnover Proceeding"), a proceeding which resulted in an order of turnover under the caption, Weininger v. Castro, 462 F. Supp.2d 457 (S.D.N.Y. 2006);

(b)     Ana Margarita Martinez, the plaintiff in Martinez v. The Republic of Cuba, 07 Civ. 6607 (VM), an action brought in the United States District Court for the Southern District of New York seeking recognition of a Florida state court judgment against The Republic of Cuba, as well as execution pursuant to TRIA against blocked Cuban assets, in respect of which a prejudgment order of attachment issued by this Court against such blocked assets was served on JPM Chase on September 19, 2007 (the "Martinez Order of Attachment");

(c)     Jeanette Hausler (as Successor Personal Representative of the Estate of Robert Otis Fuller, Deceased, on behalf of Thomas Caskey as Personal Representative of the Estate of Lynita Fuller Caskey, surviving daughter of Robert Otis Fuller, the Estate of Robert Otis Fuller, Frederick Fuller, Frances Fuller, Grace Lutes, Jeannette Hausler and Irene Moss) ("Hausler"), the plaintiff in a proceeding brought to enforce a default judgment against The Republic of

9

Cuba and others in the 11th Judicial Circuit in and for Miami-Dade County, Case

No. 02-12475, and thereafter removed to the United States District Court for the

District of Florida, where it is docketed as Case No. 07-22375-Civ-

Hoeveler/Brown (S.D. Fla.), and in connection with which a notice (the "Notice

of Claim") was sent to the undersigned counsel to which was attached (i) a Writ

of Garnishment to AT&T directing AT&T to state whether it was indebted to

"The Republic of Cuba . . . and [its] agencies and instrumentalities, including but

not limited to the Cuban American Telephone & Telegraph Company," as well as

(ii) the answer of garnishee AT&T in the Hausler proceeding in which AT&T

identified a funded tax liability owed to The Republic of Cuba in respect of

interest accrued on deposits held in the AT&T Long Lines Account and the

Florida Land Sale Account, asserted that the funds in the AT&T/CATT Accounts

other than amounts owed to The Republic of Cuba as a tax liability were owed

solely to CATT, and identified CATT as a wholly-owned subsidiary of AT&T,

not an agency or instrumentality of Cuba;

(d)     AT&T, which established the AT&T Long Lines Account and the

Florida Land Sale Account, which has deposited funds into the AT&T/CATT

Accounts that it states were owed solely to CATT, and which has administered

the Accounts from their inception;

(e)     CATT, which has been identified by AT&T as the owner of the

funds in the AT&T/CATT Accounts other than the funds earmarked as being

owed to The Republic of Cuba in respect of tax liabilities; and

10

(f)    The Republic of Cuba, which has been identified by Anderson and by AT&T as the obligee of the accrued tax liabilities in respect of interest earned on the AT&T Long Lines Account and the Florida Land Sale Account, and has, in addition, been identified by Hausler as the parent of CATT, which is alleged by Hausler to be an agency or instrumentality of Cuba.

35.    The Anderson Petition for Turnover, the Martinez Order of Attachment, and the Hausler Notice of Claim to amounts owed to The Republic of Cuba and its alleged agencies and instrumentalities, including CATT, thus represent adverse claims against the deposits in the AT&T/CATT Accounts (as well as other blocked accounts not specifically identified) within the meaning of Fed. R. Civ. P. 22, Sections 5239 and 6221 of New York's Civil Practice Law and Rules ("CPLR") (as made applicable to this proceeding by Rule 69 of the Federal Rules of Civil Procedure), and Section 134 of the Banking Law of the State of New York.

36.    The attempts by Anderson, Martinez and Hausler to enforce judgments held against The Republic of Cuba by attaching blocked deposits held in the name of or for the benefit of parties other than The Republic of Cuba also represent adverse claims against these deposits within the meaning of Section 134 of the Banking Law of the State of New York, as well as Fed. R. Civ. P. 22, and CPLR §§ 5239 and 6221 (as made applicable to this proceeding by Rule 69 of the Federal Rules of Civil Procedure).

37.    Under these circumstances, where there may be conflicting claims to property held or deposit debts owed by JPM Chase, thereby exposing JPM Chase to the risk of double or multiple liability, Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and

11

Section 134 of the New York Banking Law recognize JPM Chase as a stakeholder and provide mechanisms for JPM Chase to bring before the court any person or "adverse claimant" with a claim to the same funds that may not already be party to the action.

38.    Accordingly, Garnishee-Respondent JPM Chase respectfully alleges as follows for its Third-Party Petition under Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221, and Section 134 of the New York Banking Law:

## JURISDICTION AND VENUE IN RESPECT
## OF THE THIRD-PARTY PETITION OF JPM CHASE HEREIN

39.    This Court has jurisdiction over this proceeding to resolve adverse claims to the blocked deposits in question because the turnover proceeding initiated by Anderson giving rise to the Third-Party Petition must necessarily invoke federal law in order to enforce under TRIA a judgment against The Republic of Cuba against blocked deposit debts owed to the Republic or its agencies and instrumentalities, and thus arises under the Constitution, laws or treaties of the United States.  In addition, this Court has jurisdiction of this proceeding under 28 U.S.C. § 1330 in that it is in the nature of an action brought against a foreign state as defined in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. 1602 *et seq.*, *see* 28 U.S.C. § 1603(a).  Moreover, this case is deemed to arise under the laws of the United States because it is a suit to which a corporation organized under the laws of the United States, namely JPM Chase, is a party that arises out of deposit transactions involving international or foreign banking.  12 U.S.C. § 632.  This Court furthermore has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all claims that are so-related to claims in the proceeding within the Court's original jurisdiction that they form part of the same case or controversy.  Pursuant to Rule 69 of

12

the Federal Rules of Civil Procedure, proceedings supplemental to and in aid of execution are to be in accordance with the practice and procedure of the state in which the district court is held, subject to any applicable statute of the United States.

40.     Venue in respect of the Third-Party Petition is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (e) because the property that is the subject of this third-party proceeding is situated in this district.

### THE PARTIES AND THE ADVERSE CLAIMS BEING ASSERTED

41.     Respondent and Third-Party Petitioner JPM Chase is a national banking association incorporated under the laws of the United States that maintains its main office at 1111 Polaris Parkway, Columbus, Ohio, and that maintains a branch office at 270 Park Avenue in the City and State of New York.

a.     **Plaintiff-Petitioner Anderson and the Enforcement Being Sought by Anderson**

42.     Upon information and belief, Plaintiff-Petitioner Anderson is a resident of Florida, is the Personal Representative of the Estate of Howard Anderson, and is the alleged successor in that capacity to Dorothy Anderson McCarthy ("McCarthy"). McCarthy obtained a Florida state court judgment by default, thereafter federalized the judgment in the United States District Court for the Southern District of Florida, and after registering the judgment in the United States District Court for the Southern District of New York, undertook discovery with respect to the accounts held by JPM Chase that were blocked pursuant to the Cuban Assets Control Regulation, 31 C.F.R. Part 515. McCarthy ultimately obtained a turnover of funds resulting in partial satisfaction of a $67

13

million judgment.  Anderson presently holds a judgment against The Republic of Cuba

that is alleged to be unsatisfied in an amount in excess of $23 million.

43.    Contemporaneously with the enforcement effort commenced by

McCarthy,[1] JPM Chase was served with a Sheriff's Levy and Order of Attachment issued

at the request of plaintiff Janet Ray Weininger ("Weininger").  Weininger, who was

seeking to enforce a $24 million Florida default judgment against The Republic of Cuba

and various Cuban officials and instrumentalities, had directed the Sheriff to levy on

certain of the same enumerated blocked accounts.[2]

44.    Because AT&T, on its own behalf and on behalf of CATT, was known to

claim an interest in certain of the same accounts against which enforcement was

simultaneously being sought by Weininger and McCarthy, including, without limitation,

the AT&T Long Lines Account, JPM Chase was faced with conflicting claims and

obligations, and was directly subject to the risk of double or multiple liability.

45.    Accordingly, following removal of the Weininger proceeding to this

Court, JPM Chase filed a Third-Party Petition commencing a proceeding in the nature of

interpleader in order to bring before the Court all parties, including the Republic of Cuba

---

[1] A notice of service of writ of execution that accompanied the U.S. Marshal's levy on behalf of McCarthy specifically identified three New York deposit accounts, including the AT&T Long Lines Account, and also designated generally any other account "in the name of or for the benefit of 'Banco Nacional de Cuba.'"  The Florida Land Sale Account was not identified.

[2] The Permanent Mission of Cuba to the United Nations maintained at that time and continues to maintain two accounts with JPM Chase that are licensed for operation by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC").  These accounts, which are not blocked accounts and are operated pursuant to an OFAC license, are immune from attachment or execution pursuant to the Vienna Convention on Diplomatic Relations.  In addition, there is an account which holds, upon information and belief, the proceeds from the sale of diplomatic property by the Permanent Mission which is understood to be likewise immune from attachment and execution pursuant to the Vienna Convention on Diplomatic relations.

and the Cuban agencies and instrumentalities believed to have an interest in the accounts specifically identified as being subject to enforcement, whose rights and property or interests in property might be implicated by the McCarthy and Weininger enforcement proceedings.

46.    In response to the Third-Party Petition, judgment creditors McCarthy and Weininger commenced turnover proceedings.  One of the accounts subject to the turnover proceedings was the AT&T Long Lines Account.  Neither the Florida Land Sale Account nor any of the other blocked accounts not specifically designated was the subject of a turnover application.  By its Opinion and Order dated November 28, 2006, this Court granted the McCarthy and Weininger turnover applications and made a number of factual and legal findings in support of turnover.  As indicated above, the Opinion of the Court is reported at 462 F. Supp.2d 452 (S.D.N.Y. 2006).  The Weininger judgment was subsequently satisfied, upon information and belief, but the McCarthy judgment allegedly remains unsatisfied in an amount in excess of $23 million.

47.    During the course of this past summer, on July 18, 2007, counsel for McCarthy renewed an earlier inquiry into the status of various accounts that are carried on the books of JPM Chase in the name of Banco Nacional de Cuba.  Documents previously produced to McCarthy were again made available to its counsel.  None of those accounts presently remains subject to the writ of execution served on JPM Chase in August 2006.

48.    Plaintiff-Petitioner Anderson commenced the present turnover proceeding by serving the Petition for Turnover on an agent appointed by JPM Chase for service of

15

process on September 12, 2007. The Petition for Turnover specifically seeks turnover of funds earmarked as Cuban tax liabilities in the AT&T Long Lines Account and the Florida Land Sale Account. Only the AT&T Long Lines Account, which was the subject of the McCarthy writ of execution and McCarthy's turnover petition, remains subject to the McCarthy writ of execution. No application was made to extend the efficacy of the McCarthy writ of execution, and no application has been made on behalf of Plaintiff-Petitioner Anderson to serve a second writ of execution on JPM Chase.

**b.    Adverse Claimant-Respondent Martinez and the Enforcement Being Sought by Martinez**

49.    Upon information and belief, Adverse Claimant-Respondent Martinez is a resident of Florida who obtained by default a Florida state court judgment against the Republic of Cuba. The judgment on the Martinez claim awarded compensatory damages to Martinez in the amount of $7,175,000.

50.    Martinez has commenced an action on the judgment in the United States District Court for the Southern District of New York, 07 Civ. 6607 (VM), and in connection with this effort has obtained a pre-judgment order of an attachment against the blocked assets of the Republic of Cuba and its agencies and instrumentalities (previously defined as the "Martinez Order of Attachment").

51.    The Martinez Order of Attachment was served on JPM Chase on September 19, 2007.

52.    The Martinez Order of Attachment covers the same account that is subject to the Anderson Petition for Turnover and the Hausler Notice of Claim, and covers other blocked accounts as well.

16

**c.    The Hausler Enforcement Proceeding in Florida and the Hausler Notice of Claim**

53.    Upon information and belief, Adverse Claimant-Respondent Hausler is a resident of the State of Florida who holds a Florida state court judgment that was entered by default against the Republic of Cuba and various Cuban officials and instrumentalities, and that awarded compensatory damages to Hausler in her representative capacity in the amount of $80 million.

54.    Upon information and belief, Adverse Claimant-Respondent Hausler commenced enforcement proceedings in Florida state court, and in that connection served AT&T with writs of garnishment that required it to disclose any debts owed to "The Republic of Cuba . . . and [its] agencies and instrumentalities, including but not limited to the Cuban American Telephone and Telegraph Company."

55.    In response to the Florida writs of garnishment, AT&T filed an answer in which it disclosed information relating to potential claims by and against a Cuban communications company, EMTELCUBA, and an accrued tax liability owed by CATT, its wholly-owned subsidiary, to The Republic of Cuba in respect of interest earned on deposits credited to the AT&T Long Lines Account and the Florida Land Sale Account.

56.    In addition to providing the information set forth above, AT&T asserted various affirmative defenses to the garnishment, including Hausler's failure to join various indispensable parties, including JPM Chase, and the inability of the Florida court to exercise garnishment jurisdiction over blocked accounts located in the State of New York.

57.    On September 11, 2007, Hausler dispatched by DHL Courier a pleading entitled "Notice to JPM Chase Bank, N.A. Pursuant to Florida Statute §77.055" (the "Notice of Claim") to the undersigned counsel at its offices at 450 Lexington Avenue, New York, New York 10017. The Notice of Claim which was sent to this firm because it had been identified as counsel to JPM Chase in the Weininger/McCarthy proceedings, did not constitute proper service.

58.    The Notice of Claim contained a copy of the "Answer of Garnishee AT&T Corp." and various other papers related to Hausler's garnishment, including a copy of Hausler's writ of garnishment. The Notice of Claim stated in paragraph 2 as follows:

> "Pursuant to F.S. §77.055, the recipient of this Notice must move to dissolve the Writ of Garnishment within twenty (20) days after the date of this Notice if any allegation in the Plaintiffs' Motion for Order Authorizing the Issuance of a Writ of Garnishment After Judgment Against AT&T ('Plaintiffs' Motion') is untrue."

A copy of Plaintiffs' Motion Authorizing the Issuance of a Writ of Garnishment After Judgment ("Plaintiffs' Garnishment Motion") was also attached to the Notice of Claim.

59.    Paragraph 4 of Plaintiffs' Garnishment Motion provided as follows:

> "Plaintiffs have reason to believe that the above-named Garnishee, AT&T, has in its possession or control, deposits, accounts, or tangible or intangible personal property of Cuban Government Defendants and/or their agencies and instrumentalities, including but not limited to the Cuban American Telephone & Telegraph Company ('CATT'), and moves this Court to enter an order authorizing the issuance of a writ of garnishment commanding the Garnishee named above to answer according to law in such cases provided."

60.    Paragraph 4 is either incorrect or fatally incomplete insofar as the AT&T Long Lines Account and the Florida Land Sale Account are concerned. The AT&T/CATT Accounts, which are subject to the Cuban Assets Control Regulations, 31

C.F.R. Part 515, are not in the possession or control of AT&T, or any garnishee other than JPM Chase. Both AT&T/CATT Accounts are located in New York, where they are reflected on the books of the New York branch office of JPM Chase, that branch office is the only proper garnishee in respect of the Accounts, and the AT&T/CATT Accounts are subject to attachment, garnishment or execution only pursuant to process issued by a New York state or federal court.[3]

61.    The plaintiff judgment creditors in Weininger and McCarthy, as well as in the Anderson and Martinez proceedings, tacitly recognized this circumstance when they either registered the Florida judgments in New York, or commenced actions on the Florida judgments in New York, before commencing enforcement against the New York accounts in question.

62.    The New York branch office of JPM Chase was not served with a Florida writ of garnishment even though the Notice of Claim was delivered to its New York counsel.

63.    On September 11, AT&T removed the Hausler garnishment proceeding to the United States District Court for the Southern District of New York, and on September 24, 2007 filed a motion to transfer the Hausler action to the United States District Court for the Southern District of New York, which is the district in which the Anderson and Martinez actions are presently pending. The situs of the AT&T/CATT Accounts is also in the Southern District of New York, and in order for Hausler to seek enforcement

---

[3] While AT&T may be deemed to be a garnishee in certain respects with respect to the amounts it has owed to CATT, it is not a garnishee in respect of the JPM Chase AT&T/CATT Accounts.

against those accounts, it will be necessary for her to obtain recognition of the Florida default judgment in this jurisdiction.

### d.     Adverse Claimant-Respondent AT&T and the Claim It Has Asserted to Amounts in the AT&T/CATT Accounts

64.     Third-Party Adverse Claimant-Respondent AT&T is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 900 Routes 202/206, North Bedminster, New Jersey 07921. AT&T has paid funds into the AT&T/CATT Accounts that are subject to the enforcement efforts initiated by Anderson, Martinez and Hausler.

65.     On information and belief, AT&T established the AT&T Long Lines Account to deposit monies it owed to or held for the account of Cuban entities providing international telecommunication services that would have been paid to the Cuban entity absent the prohibitions on such payments imposed by the Cuban Assets Control Regulations. These entities included, upon information and belief and without limitation, CATT and various telecommunications companies owned in whole or in part by The Republic of Cuba.

66.     Upon information and belief, therefore, the deposit debt owed by JPM Chase in respect of the AT&T Long Lines Account at or about the time of commencement of the McCarthy and Weininger turnover proceedings represented payments due from AT&T to CATT or to one of the telecommunications companies owned by Cuba, or by CATT to one or more of such companies. AT&T, CATT, The Republic of Cuba and several telecommunications companies owned by Cuba were accordingly named as Adverse Claimant-Respondents in the JPM Chase Third-Party

Petition. Only AT&T and CATT appeared in the proceeding for the purpose of asserting a claim to funds in the AT&T Long Lines Account.

67.     The balance in the AT&T Long Lines Account on May 31, 2005 was $26,241,000.00. AT&T and CATT did not claim ownership of the entire balance in the account, but did assert an ownership claim over a portion of the account. Pursuant to a stipulation entered into by and among McCarthy, Weininger, AT&T and CATT, a stipulation that was so-ordered by the Court, the parties agreed that approximately $6 million was deemed to be held for the account of CATT. The balance remaining in that account was subsequently turned over to McCarthy and Weininger.

68.     To the extent that Anderson, Martinez or Hausler seek to apply any amounts deposited in the AT&T/CATT Accounts to satisfy their judgments, AT&T or CATT may have an interest in any such amounts, or could themselves, unless discharged, be made subject to claims from the Republic of Cuba or any party to which the funds are owed. Under such circumstances, unless an interpleader is commenced and allowed to proceed, JPM Chase could be exposed to claims by AT&T or CATT and thereby be further exposed to the risk of double or multiple liability.

69.     AT&T, as the party which made payments into this account, and CATT, which may have been the intended beneficiaries of such payments, would appear to be the parties in the best position to identify and quantify their respective interests in this blocked account, and should identify such interests, if any, in their respective answers to the Third-Party Petition.

21

e. **Adverse Claimant-Respondent CATT and Its Claim to Amounts in the AT&T/CATT Accounts**

70.    Upon information and belief, Third-Party Adverse Claimant-Respondent Cuban American Telephone & Telegraph Company ("CATT," as previously defined) is a wholly owned subsidiary of AT&T organized and existing under Cuban law.  On information and belief, AT&T deposited monies for the account of CATT into the AT&T Long Lines Account and the Florida Land Sale Account.

71.    The Hausler writ of garnishment and the Hausler reply to the Answer of AT&T Corp. to the writ assert that CATT is an agency or instrumentality of The Republic of Cuba.

f. **The Republic of Cuba**

72.    The Republic of Cuba is a foreign state within the meaning of the U.S. Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.*, and property or deposit debts which it has or may have an interest are blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515.

73.    As indicated above, AT&T, in its response to a writ of garnishment served upon it, has identified certain tax liabilities due to The Republic of Cuba in respect of interest earned on deposit balances presently credited to the AT&T/CATT Accounts.

74.    The question is thus raised in this context whether amounts owed to a foreign state are immune from attachment or execution, whether under TRIA or otherwise.

22

**AS TO THE PENDING AND ANY FUTURE CLAIMS FOR TURNOVER**

75.     JPM Chase is a stakeholder that may be subject to conflicting claims as to the deposits that are the subject of the Anderson, Martinez and Hausler enforcement proceedings.

76.     Accordingly, JPM Chase is seeking a discharge in interpleader, as well as a discharge pursuant to CPLR §§ 5209 and 6204, relieving it from all deposit obligations in respect of any blocked deposits that may be the subject of a turnover order, and protecting it thereafter from any and all claims by the Adverse Claimants-Respondents in respect of blocked deposits turned over.

77.     JPM Chase takes no position on the entitlement of Plaintiff-Petitioner and Adverse Claimant-Respondent Anderson or Adverse Claimant-Respondents Martinez or Hausler to execute on the default judgments they hold against The Republic of Cuba, or on the defenses that any of the other Adverse Claimants-Respondents may have against such execution.

78.     JPM Chase does take the position, however, that to the extent any of the Adverse Claimants-Respondents fail to appear to assert a defense to execution or a claim to the blocked deposits in question that it will be important for the Court to adjudicate, and the Court is respectfully requested so to adjudicate, all issues bearing on the rights of any or all of such defaulting Adverse Claimants-Respondents that are raised by any of the requests for execution against deposits held by JPM Chase that are the subject of this Petition, whether under New York execution law, or under TRIA, the FSIA, federal common law, or the Cuban Assets Control Regulations.

79.     Because JPM Chase does not hold sufficient blocked Cuban deposits to satisfy all of the judgments that are the subject of the Anderson, Martinez and Hausler

enforcement proceedings, it will also be essential for the Court to adjudicate the respective rights of Anderson, Martinez and Hausler, as well as AT&T, CATT and The Republic of Cuba, in the blocked deposits that are made subject to turnover.

80.     In the absence of a court order under TRIA, JPM Chase is unable to effect the unlicensed transfer of blocked deposits held by it to any Adverse-Claimant Respondent without risk of violating the Cuban Assets Control Regulations.  In addition, because it is or may be subject to conflicting orders of execution or attachment, it is unable to pay out any part of such deposits without being subjected to the risk of contempt, on the application of another party, or to claims by the other Third-Party Adverse Claimants-Respondents.

81.     To the extent Anderson, Martinez and Hausler purport to rely on Section 201 of TRIA in order to obtain execution against any blocked Cuban deposits held by JPM Chase, they should be required to establish every element under TRIA as a predicate for issuance of a turnover order, namely

(a)     that each judgment is (i) against a terrorist party on a claim based on an act of terrorism, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7);

(b)     that the amounts in respect of which execution is sought, including interest, are solely for compensatory damages in respect of which the terrorist party has been adjudged liable;

(c)     that, in respect of each judgment entered by default against a terrorist party that is a foreign state within the meaning of 28 U.S.C. § 1603, a copy of such default judgment was sent to the foreign state in a manner provided for service by 28 U.S.C. § 1608(a) and (c);

24

(d)    that, to the extent necessary, Anderson, Martinez and Hausler have each served their respective applications for relief, including attachment and execution relief, on their respective judgment debtors in a manner provided for service by 28 U.S.C. § 1608(a);

(e)    that a reasonable period of time has elapsed following the entry of the respective judgments and the giving of any notice required under 28 U.S.C. § 1608(e);

(f)    that the blocked property against which attachment, attachment in aid of execution or execution is sought is property of one of the judgment debtors or property in which one of the judgment debtors has an interest;

(g)    that, to the extent that the blocked property against which attachment, attachment in aid of execution or execution is sought consists of blocked deposits held by JPM Chase in an account opened in the name of or for the benefit of a party other than a judgment debtor which is an agency or instrumentality of a judgment debtor, such agency or instrumentality is liable for the debts of such judgment debtor under applicable law, whether under TRIA or otherwise; and

82.    WHEREFORE, Garnishee-Respondent and Third-Party Petitioner JPMorgan Chase respectfully requests that the Court enter judgment determining:

(a)    the precise identity of any blocked deposits being made subject to pre-judgment order of attachment, attachment in aid of execution, execution or turnover, the precise amount of blocked deposits, if any, to be turned over pursuant to any execution or turnover order, and the identity of the Adverse Claimant-Respondent, if any, to whom such turnover is to be made;

25

(b)    that each judgment as to which attachment in aid of execution or execution is ordered is (i) against Cuba as a terrorist party on a claim based on an act of terrorism within the meaning of TRIA, or (ii) based on a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7);

(c)    that the amount of each judgment as to which execution is ordered, including interest and any poundage, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as TRIA § 201(a) only permits execution upon blocked assets in aid of execution in order to satisfy judgments "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable;"

(d)    that, in respect of each judgment entered against a terrorist party by default, (i) a copy of such default judgment was sent to the foreign state in a manner provided for service by 28 U.S.C. § 1608(a) and (e), (ii) Anderson, Martinez and Hausler served the judgment debtors in accordance with 28 U.S.C. § 1608(a), to the extent service of same is held necessary, (iii) that a reasonable period of time has elapsed following the entry of said judgments and the giving of any notice to the judgment debtors required under 28 U.S.C. § 1608(e);

(e)    that, to the extent TRIA is not relied upon, any attachment, attachment in aid of execution or execution has been licensed by OFAC, and the blocked property or blocked deposits against which attachment, attachment in aid of execution or execution is ordered consists of blocked property of a judgment debtor or property in which a judgment debtor has an attachable interest, or blocked deposits owed to a judgment debtor, within the meaning of New York attachment and

26

execution law, and is not immune from execution within the meaning of the FSIA or of the Vienna Convention on Diplomatic Relations or of the Vienna Convention on Consular Relations;

(f)     that the blocked property against which attachment, attachment in aid of execution or execution is ordered consists of the blocked property or the blocked deposits of an agency or instrumentality of the Republic of Cuba, and that TRIA allows the blocked property or blocked deposits to be executed against to satisfy a judgment against the judgment debtors irrespective whether it would otherwise be immune from attachment, attachment in aid of execution or execution;

(g)     that the blocked property or deposit debt against which execution is ordered is not property subject to the Vienna Convention on Diplomatic Relations or to the Vienna Convention on Consular Relations, or blocked property or deposit debt in respect of which no waiver of the provisions of TRIA can be made by the President of the United States with respect thereto within the meaning of Section 201(b) of TRIA;

(h)     that, with respect to the Hausler Notice of Claim, (i) the situs of the ATT/CATT Accounts is on the books of the New York office of JPM Chase, which is the office where the Accounts were opened and have been maintained since their inception, (ii) the only proper garnishee in respect of the AT&T/CATT Accounts is the New York branch office of JPM Chase, (iii) execution may be had against the AT&T/CATT Accounts only pursuant to execution process issued by a New York state or federal court, (iv) the Florida writ of garnishment, which was never served on JPM Chase, had no extra-territorial effect and was

27

ineffective to place any restrain on the Accounts, and (v) the Notice of Claim, which purported to require JPM Chase to challenge the garnishment, was not properly served.

(i)    that service by JPM Chase of its Third-Party Petition was good and sufficient service;

(j)    that, upon the compliance by JPM Chase with any order of turnover, JPM Chase is and shall be discharged under CPLR §§ 5209 and 6204 from any further liability or obligation to its depositor, or to any other party, in respect of any amount so turned over, and discharged as well in interpleader pursuant to Fed. R. Civ. P. 22;

(k)    that, to the extent that JPM Chase is ordered to hold, pending further order of the Court directing turnover, or to pay into the registry of the Court upon issuance of a license by OFAC permitting such payment, any amount of a blocked deposit representing a blocked deposit debt owed, not to the judgment debtors, but to an agency or instrumentality of The Republic of Cuba, JPM Chase, pursuant to CPLR §§ 5209 or 6204, as applicable, shall be fully discharged from any and all deposit obligations or other liabilities to The Republic of Cuba, to the agency or instrumentality of The Republic of Cuba otherwise entitled to claim the deposit, or to any other person or Adverse Claimant-Respondent to the full extent of such amount so held subject to further order of the Court, or paid over into the registry of the Court;

(l)    that, in addition to the discharge under CPLR §§ 5209 and 6204 and in interpleader referred to in subparagraphs (j) or (k) above, or in the

28

alternative, judgment be entered in favor of JPM Chase discharging it in interpleader pursuant to Fed. R. Civ. P. 22,

(1) restraining and permanently enjoining Plaintiff-Petitioners Anderson, Martinez, Hausler, AT&T, CATT, and The Republic of Cuba, or any of them or their agents, from instituting or prosecuting any claim or action against JPM Chase in any jurisdiction arising from or relating to any claim to the blocked deposits held, deposited turned over pursuant to order of the Court;

(2) upon issuance of the discharge referred to above, dismissing JPM Chase as a party to these proceedings and requiring Plaintiff-Petitioner Anderson, and Adverse Claimant-Respondents Martinez, Hausler, AT&T, CATT, and The Republic of Cuba, or any of them or their agents, to litigate among themselves concerning their rights in the blocked deposits to the extent necessary.

(m)    Awarding JPM Chase its costs and the reasonable attorneys fees

incurred in pursuing its third-party petition and claim in interpleader, as well as

such other and further relief as may be appropriate.

Dated:    New York, New York
          October 2, 2007

                                        DAVIS POLK & WARDWELL

                                        By: _____
                                            James L. Kerr (JK 3900)

                                        450 Lexington Avenue
                                        New York, New York 10017
                                        (212) 450-4552


                                        Attorneys for Garnishee-Respondent and
                                        Third-Party Petitioner JPMorgan Chase
                                        Bank, N.A.