UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY ANDERSON, as the Personal
Representative of the Estate of Howard
Anderson,

             Plaintiff,                    Case Number: 07 Civ. 7974 (VM)

against

AT&T CORP., CUBAN AMERICAN
TELEPHONE AND TELEGRAPH
COMPANY, and JPMORGAN CHASE
BANK, N.A.,

             Garnishees.

_____/

## ANA MARGARITA MARTINEZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIMS OF AT&T CORP. AND CUBAN AMERICAN TELEPHONE AND TELEGRAPH COMPANY

Respondent Ana Margarita Martinez, by and through undersigned counsel, pursuant to Rule

12 of the Federal Rules of Civil Procedure, hereby moves to dismiss the cross-claims filed by AT&T

Corp. (D.E. 24) and Cuban American Telephone and Telegraph Company (D.E. 25), and states:

### Introduction

This case commenced on September 11, 2007, as a simple, straightforward, and *extremely*

*narrow* turnover action by Plaintiff Gary Anderson. (See D.E. 1 (the "Anderson Turnover

Petition").) Mr. Anderson, who represents the Estate of Howard Anderson, seeks the turnover of

certain funds held in two bank accounts located at JPMorgan Chase Bank ("JPM Chase"). These

funds represent tax liabilities owed to judgment debtor The Republic of Cuba by Cuban American

Telephone and Telegraph Company ("CATT") (a corporation organized under the laws of Cuba and

which is a wholly owned subsidiary of AT&T Corp.). These tax liabilities have been, and continue to be, generated as a result of deposits at JPM Chase by AT&T Corp. ("AT&T") on behalf of CATT— i.e., CATT's funds generate interest, which represents taxable income, and the funds payable to The Republic of Cuba for the resulting tax liabilities are maintained in the two JPM Chase accounts (hereinafter referred to the "Tax Liability Funds"). In addition, it should be noted that the Tax Liability Funds are blocked pursuant to the Cuban Assets Control Regulations (31 C.F.R. Part 515). There is no dispute as to these basic facts. In short, the Anderson turnover action is limited to the turnover of the Tax Liability Funds owed to The Republic of Cuba which are held in the blocked JPM Chase accounts.

Subsequently, AT&T, CATT, and JPM Chase filed answers to the Anderson Turnover Petition. (See D.E. 7, 9, and 10.) With its answer, JPM Chase also filed a Third-Party Petition which purported to commence an interpleader proceeding, which was also ***limited*** to the blocked Tax Liability Funds held at JPM Chase.[1] The JPM Chase Third-Party Petition purported to add potential adverse claimants which, according to JPM Chase, may have potential claims against the Tax Liability Funds, which included Ms. Martinez. (D.E. 10; see also D.E. 21.)[2] The answers filed by AT&T and CATT in response to the Anderson Turnover Petition were strictly limited to addressing issues concerning the Tax Liability Funds held at JPM Chase. (See D.E. 7 and 9.)

---

[1] JPM Chase subsequently filed an Amended Third-Party Petition, which eliminated certain potential adverse claimants that JPM Chase had identified in its original petition but which otherwise left its prior allegations mostly intact. (D.E. 21.) The Amended Third Party Petition is also limited to the Tax Liability Funds.

[2] JPM Chase styled the interpleader so as to add AT&T and CATT as interested adverse claimants, notwithstanding that Mr. Anderson had already added AT&T and CATT as parties to his original action.

2

Despite the fact that AT&T and CATT had never claimed in their filings in this case that the scope of this case went beyond the Tax Liability Funds, AT&T and CATT are now using their recent response to the JPM Chase Amended Third-Party Petition as a soapbox to assert declaratory judgment claims regarding funds that are completely unrelated to the Tax Liability Funds and/or are raising issues that were never raised by Mr. Anderson or JPM Chase, as a determination of such issues is irrelevant to this case. (See D.E. 24 at 10-20; D.E. 25 at 11-18.)  Specifically, AT&T and CATT are seeking declaratory relief (in the form of counterclaims, cross-claims and third-party claims) against JPM Chase, Ms. Martinez, and a group of judgment creditors who are pursuing claims against The Republic of Cuba in the U.S. District Court for the Southern District of Florida.

The primary thrust of these claims for declaratory relief is to seek to litigate issues regarding an accrued liability that AT&T owes to the Cuban telephone company known as EMTELCUBA (hereinafter referred to as the "Accrued EMTELCUBA Liability").  The Accrued EMTELCUBA Liability has nothing to do with the Tax Liability Funds, and no part of the Accrued EMTELCUBA Liability is being held in accounts at JPM Chase.  Similarly, CATT seeks to assert issues that were not raised by the Anderson Turnover Petition, such as a declaration that CATT's funds in the JPM Chase accounts are not subjection to execution.  (See D.E. 25 at 18.)  As CATT well knows, this case does not seek execution against money that belongs to CATT.

Notably, AT&T and CATT make reference to a September 4, 2007, letter (attached hereto as Exhibit A).  In the letter, AT&T's counsel identified two *separate* assets: (1) that CATT "has accrued a tax liability to The Republic of Cuba in the total approximate amount of $14,473.96 for Cuban income taxes that have accrued through June 30, 2007 on the accumulated gross interest income attributable to certain funds contained in two blocked accounts at JPMorgan Chase Bank";

3

and (2) that "AT&T included in a financial journal an entry for an accrued liability for telecommunications settlement payments potentially due from AT&T to Empresa de Telecomunicaciones Internacionales de Cuba ("Emtelcuba") for the period October 1992 to October 1994, and that this accrued potential liability totaled approximately $1,334,000.00." (See Ex. A.)

The Anderson Turnover Petition makes extremely clear that this case has ***nothing*** to do with funds identified on AT&T's financial journals owing to EMTELCUBA, nor is there any attempt to execute against funds that belong to CATT. (See D.E. 1.) Mr. Anderson was very specific in limiting his turnover action to the Tax Liability Funds. The Tax Liability Funds and the Accrued EMTELCUBA Liability are completely unrelated. In fact, AT&T and CATT are making a mockery of these proceedings by attempting to turn a case involving the modest amount of $14,473.96 (plus whatever tax liabilities have continued to accrue after June 2007) into a case involving an unrelated $1,334,000.00 journal entry.

On their faces, these two distinct assets stand in stark contrast to each other. First, the Tax Liability Funds are held at JPM Chase; the Accrued EMTELCUBA Liability is not. Second, the Tax Liability Funds are owed by CATT to The Republic of Cuba; the Accrued EMTELCUBA Liability is owed by AT&T, not CATT. Third, the Tax Liability Funds were recently created, whereas the Accrued EMTELCUBA Liability allegedly was created in 1992-1994. Accordingly, these two assets identified by AT&T and CATT are completely unrelated, and Mr. Anderson (and subsequently JPM Chase in its interpleader) have raised absolutely no issues concerning the Accrued EMTELCUBA Liability. Perhaps most importantly, Mr. Anderson's turnover action does ***not*** seek a turnover of the Accrued EMTELCUBA Liability or any funds that belong to CATT.

Furthermore, it should be noted that AT&T and CATT are being somewhat disingenuous in

4

their after-the-fact cross-claims. For example, AT&T and CATT seek declarations that CATT is AT&T's wholly-owned subsidiary, that CATT is not an agency or instrumentality of The Republic of Cuba, and that CATT's property is not subject to execution. (See D.E. 24 at 19; D.E. 25 at 18.) These are non-issues in this case. Indeed, Mr. Anderson made clear from the outset of this case that it is understood that CATT is AT&T's wholly-owned subsidiary, that CATT is not an agency or instrumentality of The Republic of Cuba, and that he is not seeking to execute against funds that belong to CATT. (See, e.g., D.E. 1 at ¶ 30.) Nor has Ms. Martinez made any such argument. In any case, these issues have nothing to do with the Accrued EMTELCUBA Liability which AT&T and CATT are now, belatedly, trying to inject into this case.

As suggested by the cross-claims themselves, the ostensible reason for AT&T and CATT seeking to dramatically expand this case in direct violation of the Federal Rules of Civil Procedure is that they are seeking leverage against **_other_** judgment creditors who have a judgment against The Republic of Cuba and who are seeking to garnish the Accrued EMTELCUBA Liability in the United States District Court for the Southern District of Florida. The fact that AT&T and CATT would pull such a maneuver is reprehensible.

It is bad enough that JPM Chase has attempted to implement additional hurdles for judgment creditors to execute against the modest amount of money that makes up the Tax Liability Funds. For example, in addition to the fact that JPM Chase is purporting to interplead as to funds that are already frozen (and therefore are not being deposited with the Court in any event), JPM Chase is asking this Court to determine issues that were already determined by this Court in prior proceedings with respect to the Anderson judgment where JPM Chase, AT&T, and CATT were already parties. See Weininger v. Castro, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) (Marrero, J.).

In sum, what AT&T and CATT are now doing is a true travesty, and the fact that Ms. Martinez has to devote time and resources to specious cross-claims is prejudicial to her. The Anderson family and Ms. Martinez were victimized by the brutal Castro regime. Now, AT&T and CATT are attempting to further victimize and intimidate Mr. Anderson and Ms. Martinez by seeking to make them have to litigate issues which were never asserted in the Anderson Turnover Petition and which are not related to the Anderson Turnover Petition or Ms. Martinez's response to the JPM Chase interpleader. As explained below, it is not permissible for AT&T and CATT to further their agenda by impeding Mr. Anderson and Ms. Martinez regarding a claim that is not worth much more than $14,000 at this time (and it is expected that this amount will only increase very slowly as the tax liability further accrues).

**Argument**

**I.    THE CROSS-CLAIMS VIOLATE FEDERAL RULE OF CIVIL PROCEDURE 13(g) AS THE CLAIMS ARE NOT BASED ON THE SUBJECT MATTER OF THE ORIGINAL ACTION OR RELATE TO THE PROPERTY THAT IS THE SUBJECT MATTER OF THE ORIGINAL ACTION.**

Federal Rule of Civil Procedure 13(g) provides:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g).[3] Where an attempted cross-claim is not sufficiently related to the main action

---

[3] Prior to December 1, 2007, Rule 13(g) provided:

> A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the

within the meaning of Rule 13(g), the cross-claim should be dismissed. <u>See, e.g.</u>, <u>Mount Vernon Fire Ins. Co. v. A.S. Construction, Inc.</u>, 2007 WL 2275242, * 5 (E.D.N.Y. Aug. 7, 2007); <u>Ross v. Bolton</u>, 639 F. Supp. 323, 329 (S.D.N.Y. 1986); <u>United States v. DCS Development Corp.</u>, 590 F. Supp. 1117, 1122-23 (S.D.N.Y. 1984). Indeed, such dismissal applies in the context of interpleader cases. <u>See</u> 6 Wright, Miller & Kane, <u>Fed. Prac. & P. Civ. 2d</u>, § 1432 (2007) ("However, if the cross-claim concerns matters unrelated to the fund or subject matter of the interpleader suit and is not against the common fund, then the cross-claim will be dismissed.").

In the Second Circuit, the test for determining whether a cross-claim arises out of the transaction or occurrence that is the subject matter of the original action is the same as the standard implemented to analyze compulsory counterclaims. <u>Federman v. Empire Fire and Marine Ins. Co.</u>, 597 F.2d 798, 813 (2nd Cir. 1979). As summarized by the court in <u>Mount Vernon</u>:

> In this Circuit, that standard is met when there is a logical relationship between the counterclaim and the main claim. Although the logical relationship test does not require an absolute identity of factual backgrounds, the essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

<u>Mount Vernon</u>, 2007 WL 2275242, at *3 (citations, quotations, and brackets omitted). The cross-claims by AT&T and CATT fail this test. As explained above, the essential facts of the currently-accruing Tax Liability Funds related to CATT have nothing to do with an accrued liability owed by AT&T to EMTELCUBA from 1992-1994. Permitting AT&T to seek a declaratory judgment as to

---

subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

The 2007 amendment was solely intended to be stylistic and did not change the prior rule in substance. Rule 13 Advisory Committee Notes, 2007 Amendment.

the Accrued EMTELCUBA Liability, which has no connection to the Tax Liability Funds, does not result in judicial economy, and there is no fairness by turning an extremely narrow turnover action (which deals with a continuing tax liability that appears to be approximately $14,000 per tax year) into a $1.3+ million declaratory judgment action. Likewise, there has been no turnover claim filed in this case against funds that belong to CATT.

Rule 13(g) provides that a cross-claim may arise out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim. Quite simply, the Accrued EMTELCUBA Liability does not arise from CATT's tax liabilities to The Republic of Cuba. Similarly, the fact that non-parties to this case might be making certain arguments in Florida courts does not entitle CATT to seek a declaratory judgment as to Ms. Martinez concerning whether CATT is an agency or instrumentality of Cuba. The issues now raised by CATT do not arise from the fact that CATT admittedly owes taxes to The Republic of Cuba.

Likewise, Rule 13(g) permits a cross-claim if the claim relates to any property that is the subject matter of the original action. The *only* property that was the subject of the original action is the Tax Liability Funds (which AT&T and CATT state were less than $15,000 in 2007). The Accrued EMTELCUBA Funds and funds belonging to CATT are not subject to the turnover.

Moreover, this does not present the final situation reflected in Rule 13(g) whereby Ms. Martinez would be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant. Ms. Martinez was a victim of terrorism. Under no circumstances would she be liable to AT&T or CATT for tax liabilities owed to Cuba.

The cross-claims also suffer from an additional fundamental problem. Despite the fact that AT&T and CATT now purport to present claims that would require satisfaction of the compulsory

counterclaim test in order to permit their assertion, AT&T and CATT did not assert any counterclaim in response to the Anderson Turnover Petition. This omission is tantamount to an admission by AT&T and CATT that their cross-claims are improper.

## II.    MS. MARTINEZ IS NOT A CO-PARTY WITH AT&T AND CATT AS TO WHICH RULE 13(g) WOULD APPLY.

Rule 13(g) provides that a cross-claim is a "claim by one party against a coparty." Fed. R. Civ. P. 13(g); see, e.g., In re Livent Sec. Litig., 193 F. Supp. 2d 750, 754 (S.D.N.Y. 2002) (Marrero, J.). As such, the cross-claimant and the cross-claim respondent must share "like status" in order for there to be a valid cross-claim; otherwise they are not considered to be co-parties within the meaning of Rule 13(g). International Paving Systems, Inc. v. Van-Tulco, Inc., 866 F. Supp. 682, 695 (E.D.N.Y. 1994) (cross-claim by defendant against third-party or fourth party defendant not permissible). Likewise, courts have held that, if two parties are adverse to each other, they are not co-parties for purposes of Rule 13(g). See, e.g., Reynolds v. Rick's Mushroom Service, Inc., 2006 WL 1490105, *5 (E.D. Pa. May 26, 2006) (striking cross-claim asserted by original defendant against third-party defendant).

It is important to note that the role of AT&T and CATT is dictated by the fact that Mr. Anderson named them as original ***defendants*** to this case. Notably, when AT&T and CATT answered the Anderson Turnover Petition, they did not file any claim against Ms. Martinez. The fact that they and JPM Chase have been slapping additional titles on AT&T and CATT (e.g., Adverse-Claimant Respondents and Third-Party Petitioners) does not detract from the fact that the role of AT&T and CATT has been shaped by the fact that Mr. Anderson named them from the outset as named garnishees in the Anderson Turnover Action. It cannot be legitimately argued that Ms. Martinez shares "like status" with AT&T and CATT within the context of Rule 13(g).

Moreover, when JPM Chase filed its interpleader action, it identified AT&T, CATT, and Ms. Martinez as adverse claimants. They are not "co-parties" under Rule 13(g).

## III.    THE CLAIMS FOR COSTS AND ATTORNEYS FEES SHOULD BE STRICKEN.

In their cross-claims, AT&T and CATT assert vague pleas for "Costs and attorneys fees." (See D.E. 24 at 20; D.E. 25 at 18.) The Court should not need to reach the issue of striking AT&T's and CATT's pleas for costs and attorneys fees as the cross-claims should be dismissed in their entirety for the reasons noted above. In any case, if the Court were to address these vague requests for costs and attorneys fees, they should be stricken.

Generally, a prayer for attorneys fees should be stricken unless a particular statute or contractual agreement provides for an award of attorneys fees. See, e.g., Sharma v. Skaarup Ship Mgt. Corp., 699 F. Supp. 440, 450 (S.D.N.Y. 1988) (striking prayer for attorneys fees pursuant to Rule 12(f)), aff'd, 916 F.2d 820 (2nd Cir. 1990), cert. denied, 499 U.S. 907 (1991). There is absolutely no basis for AT&T and CATT to claim costs or attorneys fees from Ms. Martinez.

In short, these types of pleadings are an attempt to add insult to injury. It is bad enough that Ms. Martinez was the victim of the terrorist acts of Cuba. As there is no legal basis for AT&T and CATT to inject such issues into this case, the prayer for costs and attorneys fees should be stricken.

### Conclusion

The fact that AT&T and CATT are attempting to assert improper cross-claims is an outrage. The declaratory judgment cross-claims have no place in this case. For the foregoing reasons, the cross-claims filed by AT&T and CATT should be dismissed in their entirety.

10

**TEW CARDENAS LLP**

By: s/Bryan T. West__
Joseph A. DeMaria  (JD 5668)
jad@tewlaw.com
Bryan T. West (BW 8739)
btw@tewlaw.com
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Phone: 305 536-1112
Fax: 305-536-1116
*Counsel for Ana Margarita Martinez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 3rd day

of March, 2008, on the following:

**VIA ECF**:

James L. Kerr, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
*Counsel for JPMorgan Chase*

Lynn A. Dummett, Esq.
SIDLEY AUSTIN
787 Seventh Avenue
New York, NY 10019
*Counsel for AT&T Corp. and Cuban American Telephone and Telegraph Corp.*

                                                        s/Bryan T. West

@PFDesktop\::ODMA/MHODMA/DMS_NT;Miami;501742;1