# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOROTHY ANDERSON McCARTHY, as
Personal Representative of the estate of
Howard Anderson,

        Plaintiff,

against

THE REPUBLIC OF CUBA,

        Defendant,

and

JPMORGAN CHASE BANK, N.A.

        Garnishee-Respondent.     ECF Case

_____/    05 Civ. 7214 (VM)

JPMORGAN CHASE BANK, N.A.

        Garnishee-Respondent and
        Third-Party Petitioner,

against

JANET RAY WEININGER, Individually and
as Administrator, Executor, Personal
Representative, and/or Guardian of the Estate
of her father, Thomas Willard Ray;
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C., in Its
Capacity as Alleged Fiduciary in Respect of
the Rabinowitz Boudin Special Account (as
defined in the Third-Party Petition); BANCO
NACIONAL DE CUBA, EMPRESA
CUBANA EXPORTADORA DE
ALIMENTOS Y PRODUCTOS VARIOS
(CUBAEXPORT), EMPRESA DE
TELECOMUNICACIONES
INTERNACIONALES DE CUBA
(EMTELCUBA), EMPRESA DE

123

TELECOMUNICACIONES DE CUBA, S.A.
(ETECSA), EMPRESA DE
RADIOCOMUNICACION Y DIFUSION DE
CUBA (RADIOCUBA), AT&T CORP.,
CUBAN AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, JOHN W.
SNOW, SECRETARY OF THE
TREASURY, In His Official Capacity,

        Adverse Claimants-
        Respondents,

and

DOROTHY ANDERSON MCCARTHY, as
Personal Representative of the Estate of
Howard Anderson,

        Plaintiff and Adverse
        Claimant-Respondent.
_____/

DOROTHY ANDERSON McCARTHY, as
Personal Representative of the estate of
Howard Anderson,

        Petitioner/Counter-Petitioner,
against

JPMORGAN CHASE BANK, N.A., and
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.

        Garnishees-Respondents.

and

JANET RAY WEININGER, Individually and
as Administrator, Executor, Personal
Representative, and/or Guardian of the Estate
of her father, Thomas Willard Ray;

        Adverse Claimant-Respondent.
_____/

2

## DECLARATION OF JOSEPH A. DEMARIA, ESQ.

Joseph A. DeMaria, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am an attorney admitted to practice before this Court (JD-5668).  I am a partner with the law firm of Tew Cardenas LLP, which has been retained by Dorothy Anderson McCarthy in connection with her efforts to enforce federal and state judgments against property of the Republic of Cuba and its agencies and instrumentalities.  This Declaration is based on my personal knowledge.

2.      Ms. McCarthy is the judgment creditor in an action entitled Dorothy Anderson McCarthy, as Personal Representative of the Estate of Howard Anderson v. The Republic of Cuba, United States District Court for the Southern District of Florida, Case. No. 04-21153-CIV-KING/O'SULLIVAN (the "Florida Federal Action").  The Florida Federal Action was an action to enforce a state court judgment entered in favor of Ms. McCarthy against the Republic of Cuba, pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §1602 *et. seq.* ("FSIA").  The underlying state court judgment awarded Ms. McCarthy compensatory damages in the amount of $67,000,000 based upon the extrajudicial torture and killing of her late husband, Howard Anderson, by the Republic of Cuba.  A copy of the Final Judgment from the Florida state court action is attached hereto as Exhibit A.

3.      On February 2, 2005, Final Default Judgment was entered against the Republic of Cuba in the Florida Federal Action.  A copy of the Final Default Judgment is attached hereto as Exhibit B.

3

4.      Pursuant to Section 1608(e) of the FSIA, the Republic of Cuba was served with the Final Default Judgment in accordance with Section 1608(a) of the FSIA.[1]  Specifically, counsel for Ms. McCarthy submitted the Final Default Judgment to the Clerk of the Court of the United States District Court for the Southern District of Florida, pursuant to Section 1608(a)(3) of the FSIA, and, on February 14, 2005, the Clerk served the Default Judgment upon the Republic of Cuba, via certified mail.  A copy of the Clerk's Notice of Service is attached hereto as Exhibit C.  On March 16, 2005, the Republic of Cuba was served, through the Clerk of the United States District Court for the Southern District of Florida, by diplomatic channels, as required by Section 1608(a)(4) of the FSIA.  A copy of my letter and supporting service documents to the Director of Special Consular Services for the U.S. Department of State is attached hereto as Exhibit D.  On May 6, 2005, the Department of State delivered to the Clerk of the Court in the Florida Federal Action confirmation that the Final Default Judgment was served on the Republic of Cuba on April 13, 2005, through diplomatic channels in accordance with Section 1608(a)(4) of the FSIA.  A copy of the confirmation of service is attached as Exhibit E.

5.      Thereafter, based upon information indicating that assets of the Republic of Cuba might be located in New York, on May 25, 2005, counsel for Ms. McCarthy registered the Final Default Judgment from the Florida Federal Action with the Clerk of the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1963.  A copy of the Transcript of Judgment is attached as Exhibit F hereto.

---

[1]

Prior to obtaining the Final Default Judgment in the Florida Federal Action, Plaintiff had likewise followed the same procedures in serving the Republic of Cuba with the Final Judgment from the Florida state court action and her Summons, Complaint and Notice of Suit (in English and Spanish).  Compliance with these steps enabled the federal court in the Southern District of Florida to issue the federal Final Default Judgment.

4

6.      On August 22, 2005, the United States District Court for the Southern District of New York (Judge Laura Taylor Swain) issued an Order for Immediate Issuance of Writ of Execution. A copy of the Order is attached hereto as Exhibit G.  Previously, Plaintiff served the Republic of Cuba with a Notice to Judgment Debtor or Obligor pursuant to Section 5222(d) of the CPLR, a copy of which is attached hereto as Exhibit H.

7.      After receiving the Order for Immediate Issuance of Writ of Execution, a Restraining Notice to Garnishee was served on each of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C. and JPMorgan Chase Bank, N.A.  Copies of the Restraining Notices and proofs of service thereto are attached hereto as Exhibits I and J.  The Clerk also issued Writs of Execution.  See Exhibit K hereto.

8.      On September 2, 2005, the United States Marshal served each of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C. and JPMorgan Chase Bank, N.A. with a Writ of Execution. The respective Process Receipts and Returns and corresponding Notices of Service of Writ of Execution are attached hereto as Exhibits L and M.

9.      In response to the Third-Party Petition of JPMorgan Chase Bank, N.A., brought pursuant to Fed. R. Civ. P. 22, CPLR §§ 5239 & 6221 and Section 134 of the New York Banking Law, Ms. McCarthy filed her Counter-Petition for a Turnover Proceeding and Petition to Determine Adverse Claims.  Through the Clerk of the Court, and pursuant to the FSIA, the Republic of Cuba and the various Cuban entities which were identified by JPMorgan Chase Bank in its papers were served with (a) Plaintiff/Adverse Claimant-Respondent/Counter-Petitioner Dorothy Anderson McCarthy's Answer and Affirmative Defenses to Third-Party Petition of JPMorgan Chase Bank, N.A., Counter-Petition for a Turnover Proceeding and Petition for Determination of Adverse Claims, (b) a Notice of Petition for Turnover Proceeding and to Determine Adverse Claims Pursuant to

5

CPLR §§ 5225(b), 5227 and 5239, and (c) a Notice of Suit (all of which contained copies in both English and Spanish). (See Docket Entry No. 104.) None of the Cuban entities has served us with a response to any of the foregoing.

10. Rabinowitz Boudin was also served with a Summons, the Plaintiff/Adverse Claimant-Respondent/Counter-Petitioner Dorothy Anderson McCarthy's Answer and Affirmative Defenses to Third-Party Petition of JPMorgan Chase Bank, N.A., Counter-Petition for a Turnover Proceeding and Petition for Determination of Adverse Claims, and the Notice of Petition for Turnover Proceeding and to Determine Adverse Claims Pursuant to CPLR §§ 5225(b), 5227 and 5239. Rabinowitz has failed to respond and therefore is in default.

11. In aid of execution of her federal judgment, counsel for Ms. McCarthy served JPMorgan Chase Bank with a subpoena for documents. In response to the subpoena, JPMorgan Chase Bank provided a listing of accounts which have been frozen pursuant to the federal Cuban Asset Control Regulations. A redacted listing of the accounts is attached hereto as Exhibit N. The listing identifies the "Rabinowitz Boudin SPL for Account of Republic of Cuba" account, the "AT&T Long Lines" account, the "Empresa de Telecomunicaciones" account, and 50 accounts where Banco Nacional de Cuba is named under the listing of "Owner" of the accounts.

12. No release of funds has been made in response to Ms. McCarthy's Writs of Execution, and Ms. McCarthy's judgments remain unsatisfied in their entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2006.

Joseph A. DeMaria

@PFDesktop\::ODMA/MHODMA/DMS_NT;MIAMI;453718;1

6

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

DOROTHY ANDERSON McCARTHY,
as Personal Representative of the estate of
Howard Anderson,

GENERAL JURISDICTION DIVISION

    Plaintiff,

CASE NO: 01-28628 CA 04

vs.

# FINAL ORDER AS TO ALL PARTIES

## SRS DISPOSITION _12_

THE REPUBLIC OF CUBA,

**FINAL JUDGEMENT**

    Defendant.

_____/

## **INTRODUCTION**

On April 19th, 1961, Howard F. Anderson, an American citizen, was executed by a firing

squad at the hands of the then new communist government of Cuba. This execution is viewed by

this Court as an "extrajudicial killing" pursuant to 28 U.S.C. 1605 for the various reasons set

forth below. Mr. Anderson's killing followed a month of solitary confinement, torture, and the

deprivation of his civil and human rights. His death left in its wake a devastated family: his wife,

Dorothy; his oldest son, Gary; his middle boy, Marc; and his girls, Lee and Bonnie. These five

individuals lost the financial and emotional support of a highly successful businessman, and a

protective husband and father. This suit is not barred by any statute of limitations because,

pursuant to 28 U.S.C. 1605(f), all principles of equitable tolling, including the period during

which the foreign state was immune from suit, apply.

Although this Court entered an initial default on January 23rd, 2003, the *Foreign*

*Sovereign Immunities Act* (FSIA) requires that the Plaintiff establish the "claim or right to relief

by evidence satisfactory to the [C]ourt." To that end, this Court held an ex-parte trial, without a

1

A TRUE COPY
CERTIFICATION ON LAST PAGE

RECORDED
APR 1 7 2003
Clerk of Circuit
& County Courts

jury, on March 11th and 12th, 2003. This Court concludes that Judgement shall be given for Plaintiff.

**FINDINGS OF FACT**

As Administrator, Executor and/or Personal Representative of Howard F. Anderson's estate, Mrs. Anderson brought the suit in her representative capacity and on her own behalf as surviving spouse and that of the following survivors and/or beneficiaries:

Gary K. Anderson, son of the decedent;

Marc H. Anderson, son of the decedent;

Lee G. Anderson, daughter of the decedent; and

Bonnie M. Anderson, daughter of the decedent.

During World War II, HOWARD F. ANDERSON ("Mr. Anderson") was stationed in Cuba with the U.S. Navy. There, he met and married Dorothy Stauber. Mr. and Mrs. Anderson, both U.S. citizens, lived in Havana, Cuba and had four children. Mr. Anderson was a successful businessman who owned and operated car dealerships, service stations, and a boat manufacturing company. Although living in Cuba, he maintained his ties to his American citizenship, and, among other things, was president of the American Legion Post #1 in Havana, Cuba.

During 1959, the Cuban Communist Revolution ensued, and the island nation's government was forcibly replaced by a communist regime led by Fidel Castro. The Castro government radically altered the economy and social structure of the island. Obviously, the survival of free enterprise in businesses and institutions as they existed, was to change. As a precaution, during 1960, Mr. Anderson moved his wife and children to Miami, Florida. Mr. Anderson, however, returned to Cuba to mind the family's businesses while traveling regularly to

2

A TRUE COPY
CERTIFICATION ON LAST PAGE

Miami to visit his family. During Christmas of 1960, he visited his family in Miami for what would be the last time and then returned to the island.

On March 13th, 1961, Mrs. Anderson and the children telephoned Mr. Anderson to wish him well on his 41st birthday. That was the last time they spoke. Three days later, on March 16th, 1961, Mr. Anderson was arrested at one of his service stations and taken to the Cuban G-2 Headquarters in the province of Miramar. Mr. Anderson was kept in solitary confinement until April 6th, 1961, when the Counselor of the Swiss Embassy at Havana, Gilbert de Dardel, was allowed to visit him. At that time, no trial had yet been scheduled and Mr. Anderson was not aware that he was to face trial in ten days.

Mr. Anderson was questioned extensively before the trial, without the presence of an attorney. Mr. Anderson was first provided with access to his court-appointed attorney, Raul Fleita, on the day before he was scheduled to be tried.

The wife of one of Mr. Anderson's co-defendants, Mrs. Marianna De Torre Del Cueto, was present for part of the trial. She testified that she learned of the trial from news reports and that no advance notice was provided.

On April 16th, 1961, at the time that the Bay of Pigs invasion was underway in Cuba, a "Revolutionary Tribunal" held a trial in which Mr. Anderson was charged, along with other defendants, with crimes against the Cuban State pursuant to paragraph 3, Article 157, and Article 148, of the Cuban Code of Public Defense, as amended by Law 425 of 1959. The prosecution alleged that Anderson was a liaison agent for "Accion Civica," an anti-communist movement established to challenge Castro's terrorist regime in Cuba. The prosecution also claimed that Mr. Anderson had conspired with others to smuggle arms into Cuba, which presumably were to be used against Castro's government.

A TRUE COPY
CERTIFICATION ON LAST PAGE

During Mr. Anderson's trial, the prosecutor pranced about the courtroom echoing the government's anti-American rhetoric. Reports of the trial by Mr. de Dardel detail how Anderson was yelled at and harassed by the prosecutor for being an American:

> "The spectacle of the prosecutor railing against the accused, flinging himself about like a madman, and passionately demanding the death sentence for five of them was a painful sight; among other things, he called them rotten fruit and declared that the only thing they were good for was to fertilize the land with their carcasses. He harried Anderson in particular as being an American, and dwelled at length on the relations he had maintained with the United States Embassy."

At the trial's conclusion, the prosecutor stood on a table and pointed toward Mr. Anderson yelling "death to the American." After deliberating for only a few minutes the "revolutionary court" rendered a guilty verdict and condemned Mr. Anderson to death by a firing squad.

That next day, a summary appeal was held. The condemned were not allowed to be present. Mrs. Del Cueto testified that she was present during the appeal. She testified that the attorneys pointed out to the appellate panel that nine years of imprisonment was the maximum sentence allowed by the law that the accused were charged with violating. The prosecutor renewed the demand for a death sentence. The appellate court affirmed the trial court's verdict and sentence.

At dawn on April 19th, 1961, agents of the Cuban government, acting under orders of the Cuban government, led Howard Anderson to an area where blood was drained from his body. He was then escorted to a firing squad where he was shot and killed. Mr. Anderson's body was loaded into an army truck and buried in a shallow grave in the province of Pinar del Rio. Mrs.

Del Cueto testified that she arranged to have Mr. Anderson and her husband buried in separate graves and to have small crosses bearing their names mark the graves.[1]

## CONCLUSIONS OF LAW

The Plaintiff must establish her "claim or right to relief by evidence satisfactory to the [C]ourt." 28 U.S.C. § 1608(e). See also *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 6 (D.C. Cir. 1998); *Alejandre v. Republic of Cuba*, 996 F. Supp.1239, 1242 (S.D. Fla. 1997). This case proceeded to trial on March 11th and 12th, 2003.

During this trial, the Plaintiff presented competent and substantive evidence which proved that the killing of Howard Anderson was an "extrajudicial killing" within the meaning of the law. Competent evidence was also presented regarding the amount of damages suffered by the Plaintiff and the surviving children.

### A. Jurisdiction

This action is for damages in excess of this Court's minimum jurisdiction limits of Fifteen Thousand Dollars and 00/100 ($15,000.00), exclusive of costs and interest. This Court has jurisdiction over the subject matter of this cause pursuant to the terms of 28 U.S.C. §§1330 and 1331 as Plaintiff's claims are brought pursuant to the *Foreign Sovereign Immunities Act of 1976* ("FSIA"), 28 U.S.C.A. §§ 1602, et seq. Defendant, the Republic of Cuba, is subject to suit in a court of competent jurisdiction in any state court in the United States pursuant to the provisions

---

[1] These graves were located in Cuba by Bonnie Anderson, Howard's youngest child, in 1978. Unfortunately, upon her return to Cuba in 1998, she found that the graves had been exhumed by the Cuban government. There is now, no grave to mark the burial place of Howard Anderson, or to be visited by any living relative.

5

21164 PG 2472  A TRUE COPY
CERTIFICATION ON LAST PAGE

of 28 U.S.C. § 1605. See generally, *Patterson Zonchonais (U.K.) Ltd. v. Compania United Arrow*, S.A. 493 F.Supp. 621 (D.C.N.Y. 1980).

Plaintiff has served the Republic of Cuba with the Complaint through diplomatic channels, as required by law. Cuba elected not to defend the suit. A Court has subject matter jurisdiction to hear a claim against a foreign state if the claim falls within one of the FSIA's enumerated exceptions. See, *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). There are enumerated exceptions that apply in this case that confer jurisdiction onto this Court, one such exception is the *Anti-Terrorism and Effective Death Penalty Act of 1996* ("AEDPA"). Under 28 U.S.C. § 1605(7), the sovereign immunity of a foreign state is waived when a U.S. national plaintiff seeks money damages in United States courts for acts of extrajudicial killing for which the foreign state is responsible.

This law provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —

> (7) . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph--
> (A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (> 22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and
> (B) even if the foreign state is or was so designated, if —
> (i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or
> (ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

The term "extrajudicial killing" means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. See 28 U.S.C. § 1605 (e)(1). Summary

6

21164PG2473

A TRUE COPY
CERTIFICATION ON LAST PAGE

executions would be considered "extrajudicial killing" within the meaning of 28 U.S.C. § 1350.

See., *Lafontant v. Aristide*, 844 F.Supp. 128 (E.D.N.Y. 1994) (dicta).

Pursuant to the above, a foreign state is not immune from the jurisdiction of this Court if

an American is tortured by the agent of a foreign state acting within the scope of his employment.

With respect to that, this Court finds based on the testimony of Congressman Peter Deutsch[2] and

other evidence addressed at trial, that Howard Anderson was tortured by agents of the Cuban

government acting within the scope of their employment.

Cuba is designated to be a state sponsor of terrorism under the terms and provisions of 56

(j) of the *Export Administration Act of 1979*, 50 U.S.C. § 2405 (g) of the *Foreign Assistance Act

of 1961*, 22 U.S.C. § 2371.  Congressman Peter Deutsch also testified that Cuba was a terrorist

state and that the acts of the Republic of Cuba were acts of torture.

This Court finds that Cuba is not immune from jurisdiction and is, therefore, liable to the

Estate of Howard Anderson, pursuant to 28 U.S.C. §1605 (a)(7), for perpetrating torture and an

extrajudicial killing by agents of the Cuban Government acting within the scope of their

employment.  Furthermore, this Court finds that Cuba is not immune from jurisdiction and is,

therefore, liable to the estate pursuant to 28 U.S.C. §1605 (a)(7).

**B.      The Lawsuit is within Statute of Limitations**

Mrs. Anderson's lawsuit is not barred by statute of limitations.    Although the

*Antiterrorism and Effective Death Penalty Act of 1996* (AEDPA) has a ten year limitations

period, "all principles of equitable tolling, including the period during which the foreign state was

immune from suit, shall apply in calculating the statute of limitations period" [28 U.S.C. 1605 (f)].

---

[2]Congressman Deutsch testified as an expert concerning *The Foreign Sovereign
Immunities Act*, and its relevant application.

7

A TRUE COPY
CERTIFICATION ON LAST PAGE

2 1 1 6 4 PG 2 4 7 4

Following that requirement, the ten year limitations period must be tolled during the entire time prior to 1996 that Cuba was immune from suit. Accordingly, for purposes of this lawsuit, the statute of limitations period began to run when AEDPA was enacted in 1996 – at which time the Anderson's cause of action accrued.

The principles of equitable tolling required under 28 USC 1605 (f) have been previously applied by the Courts in cases brought by American citizens [28 USC 1605 (a)(7)]. In those ~~cases, more than ten years had lapsed between the acts in the complaint and the filing of the~~ lawsuits. The Court in *Cicippio v. Islamic Republic of Iran* (18 F. Supp.2d 62 (D.D.C. 1998)) held:

> "Although the abductions of Cicippio, Reed, and Jacobsen occurred more than a decade prior to the enactment of 28 U.S.C. § 1605(a)(7), Congress expressly directed that the statute be given retroactive application. *See Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(c), 110 Stat. 1214, 1243 (reprinted at 28 U.S.C.A. § 1605 note (West Supp. 1997))*. Similarly, to the same effect, the ten-year statute of limitations for actions under §1605(a)(7) does not bar the claims in this case because, once again, Congress has provided that victims of terrorism be given benefit of "all principles of equitable tolling, including the period during which the foreign state was immune from suit ...." 28 U.S.C. § 1605(f). Iran was immune from suit by these plaintiffs under the FSIA until the enactment of § 1605(a)(7) in 1996."

Likewise, since 1996, Cuba is no longer immune.


**C.     Extrajudicial Killing and Torture**

This Court finds that Howard Anderson was the subject of torture and an extrajudicial killing within the meaning of 28 U.S.C. § 1605. The trial which led to Mr. Anderson's execution violated all internationally recognized guarantees to a fair trial. The manner in which Mr. Anderson was treated prior to his execution, including the removal of his blood, was torture under the statute. The time period from his "trial" to his "appeal" to his execution violated all

8

21164 PG 2475  A TRUE COPY CERTIFICATION ON LAST PAGE

indicia of fairness. The punishment for his crime appears to have exceeded any known code in

Cuba, or any civilized country.

Extrajudicial killing and torture for purposes of the FSIA are defined in Section 3 of *The*

*Torture Victim Protection Act of 1991*, 28 U.S.C.A. § 1350.

Section 3(a) defines Extrajudicial Killing as:

> "… a deliberated killing not authorized by a previous judgment pronounced by a regularly
> constituted court affording all the judicial guarantees which are recognized as
> indispensable by civilized peoples."

Section 3(b) defines Torture as:

> "(1)… any act, directed against an individual in the offender's custody or physical control,
> by which severe pain or suffering (other than pain or suffering arising only from or
> inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally
> inflicted on that individual for such purposes as obtaining from that individual or a third
> person information or a confession, punishing that individual for an act that individual or a
> third person has committed or is suspected of having committed, intimidating or coercing
> that individual or third person, or for any reason based on discrimination of any kind.
>
> (2) mental pain or suffering refers to prolonged mental harm caused by resulting from
>
>> (A) the intentional infliction or threatened infliction of severe physical pain or
>> suffering;
>> (C) the threat of imminent death."

Under 28 USC 1605 (a)(7), a killing carried out after the occurrence of a trial **does not by**

**itself eradicate the "extrajudicial" designation.** The trial and execution must afford the

accused "all the judicial guarantees which are recognized as indispensable by civilized peoples."

In defining what constitutes a "previous judgment pronounced by a regularly constituted court

affording all the judicial guarantees which are recognized as indispensable by civilized peoples,"

The Geneva Convention, an internationally recognized agreement between civilized nations[3],

offers relevant guidance:

---

[3]Cuba signed The Geneva Convention Agreement in 1949.

9

A TRUE COPY
CERTIFICATION ON LAST PAGE

*III. Judicial proceedings*

*Article 99*

No prisoner of war may be tried or sentenced for an act which is not forbidden by the law of the Detaining Power or by international law, in force at the time the said act was committed.

No moral or physical coercion may be exerted on a prisoner of war in order to induce him to admit himself guilty of the act of which he is accused.

No prisoner of war may be convicted without having had an opportunity to present his defense and the assistance of a qualified advocate or counsel.

*Article 100*

Prisoners of war and the Protecting Powers shall be informed as soon as possible of the offences which are punishable by the death sentence under the laws of the Detaining Power.

Other offences shall not thereafter be made punishable by the death penalty without the concurrence of the Power upon which the prisoners of war depend.

Relevant to the Anderson case is the time frame prior to the imposition of the death penalty:

*Article 101*

If the death penalty is pronounced on a prisoner of war, the sentence shall not be executed before the expiration of a period of at least six months from the date when the Protecting Power receives, at an indicated address, the detailed communication provided for in Article 107.

The facts of this case demonstrate without doubt that Howard Anderson was not afforded "the judicial guarantees which are recognized as indispensable by civilized peoples" as those guarantees are defined within the Geneva Convention – the source document from which the pertinent language of 28 USC 1605(a)(7) regarding extrajudicial killings is drawn.

A TRUE COPY
CERTIFICATION ON LAST PAGE

21164PG2477

Although ostensibly carried out in a "courtroom," Howard Anderson's trial and summary execution violated, in all respects, the judicial guarantees provided by the Geneva Convention – to which Cuba was a signatory and bound by. The violations of these guarantees include:

1. There was inadequate notice of the trial. It was scheduled overnight.

2. Prior to being tried, Anderson was questioned extensively, without the presence of an attorney.

3. ~~Anderson was not afforded the opportunity of being represented by legal counsel~~ of his own choosing.

4. Anderson was held in solitary confinement during most of the one month period between his arrest and trial.

5. Anderson was not afforded adequate time to prepare for a defense, especially in light of the severity of the charges.

6. The prosecution did not disclose its intent to seek the death penalty until the trial.

7. Anderson was taunted and humiliated for being an American by the prosecutor during the trial.

8. The trial, death sentence, appeal, and execution all took place within a two day period. The Geneva Convention requires a 6 month interval between a death sentence and its execution.

Further, the manner in which Howard Anderson was confined and treated prior to his trial and execution constitute torture as defined by the law. Applying the relevant language contained in section 3(b) of the *Torture Victim Protection Act of 1991*, 28 U.S.C.A. § 1350: While "in the offender's custody," Mr. Anderson was subjected to "severe pain or suffering," both "physical or mental" that was "intentionally inflicted on" him for the purpose of "obtaining from" Mr. Anderson "information or a confession." Most cruelly, Mr. Anderson was faced with "the threat

11

21164 PG 2478 TRUE COPY
CERTIFICATION ON LAST PAGE

of imminent death" by firing squad if he failed to sign a confession. Mental pain and suffering is defined by law as occurring when imminent death is threatened. This too was prohibited at the time by the Geneva Convention which provided in Article 99 that "no moral or physical coercion may be exerted on a prisoner of war in order to induce him to admit himself guilty of the act of which he is accused."

## ~~D.      Liability of the Republic of Cuba~~

Every significant action taken in furtherance of the ultimate execution of Howard F. Anderson was under the direction and control of the Republic of Cuba at all times. Accordingly, any and all individuals who played a role in the capture, torture, incarceration and murder of Howard F. Anderson were agents and employees of the government of Cuba and were acting within the scope of their employment and in furtherance of the aims and objectives of Cuba. See *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988); *Restatement (Second of Agency)* § 1 (1958) (defining agency relationship).

## COMPENSATORY DAMAGES

### A. Economic Loss

Florida Law calculates an estate's loss of "net accumulations" as "the part of the decedent's net income from his salary or business after taxes, including pension benefits, which the decedent, after paying his personal expenses and monies for the support of his survivors, would have left as part of his estate if he had lived his normal life expectancy.

To support the claim for economic loss, Plaintiff provided the expert testimony of Mr. Octavio Verdeja, Jr., a certified public accountant and expert in "business valuation," who has, over the years, provided calculations for businesses transported from Cuba to the United States.

12

21164 PG 2479
A TRUE COPY
CERTIFICATION ON LAST PAGE

He calculated the economic loss suffered by the Anderson family as a result of Mr. Anderson's death in two different ways.

The first method used by Mr. Verdeja calculated the probable current value of the Anderson estate had Mr. Anderson lived to pursue the types of business interests he had successfully undertaken in the late '50s. Specifically, Mr. Verdeja calculated the present value of the type of boat-building, auto dealership and service station businesses that Mr. Anderson had in 1961. Mr. Verdeja computed the value as ranging from $60 Million to $114 Million in today's dollars.

The second method used by Mr. Verdeja calculated the probable current value of the Anderson estate had Mr. Anderson lived without regard to the types of business interests he had successfully undertaken in the late '50s. Specifically, Mr. Verdeja calculated the present value of the income and savings generated by Mr. Anderson and his earnings capacity, independent of the type of business activity he would have engaged in. Mr. Verdeja computed that the current value of Mr. Anderson's estate would be approximately $50 Million in today's dollars had he lived.

Mrs. Anderson testified as to the standard of living that she and her children enjoyed in Cuba and Miami prior to her husband's death. The Anderson's enjoyed a high standard of living that had resulted from Mr. Anderson's successful entrepreneurship. Mrs. Anderson testified that following Mr. Anderson's death she returned to the work force as a secretary to provide for herself, her four children and her deceased husband's aging mother. At that time, Mrs. Anderson was earning approximately one twentieth the income that her husband had provided the family before his death.

The oldest Anderson child, Gary, also testified about his father's business pursuits. Gary Anderson was fifteen years old at the time of his father's death and had worked part time at the

13

[OFF THE RECORD]
TRUE COPY
CERTIFICATION ON LAST PAGE

service stations and the automobile dealership. He was also personally familiar with his father's boat building business. Gary Anderson described his father as a true entrepreneur and businessman, talented and focused on succeeding in numerous business ventures and widely respected for it.

It is notable that Mr. Anderson's boat building business manufactured a unique type of vessel that required special expertise that Anderson possessed. At that time, and in the many years to follow, very few companies manufactured this boat. The expertise, of course, would have traveled with Anderson to this country, had he lived. His other businesses were highly successful at his direction, and, as testified to, were not unique to Cuba, or only successful because they were located there. In other words, this Court finds sufficient evidence that the decedent, had he lived, would have, after a start up period, been equally successful in the United States.

While projecting 40 years into the future, this Court finds that, even reducing the experts most conservative calculations, the evidence presented was sufficient to justify a substantial award for economic loss. Accordingly, compensatory damages for economic loss resulting from the murder of Howard Anderson are hereby awarded in the amount of **$40 Million dollars**.

### B. Pain and Suffering

Dorothy Anderson McCarthy, in claiming damages for herself and her four children, is entitled to compensation under Florida law and the new *Civil Liability Act*. To support her claim for compensatory damages, Plaintiff presented the testimony of Dr. Claudia Edwards, who testified that the Plaintiff, Anderson, and her four children have suffered great and permanent debilitating emotional trauma as a result of the murder of Howard F. Anderson.

COURT RECORD
21164 PG 248 TRUE COPY
CERTIFICATION ON LAST PAGE

Dr. Edwards testified that the suffering endured by Mrs. Anderson and her children is irreparable and permanent.

There is no question that the injury caused by Cuba permanently damaged Mrs. Anderson and her four children. All four Anderson children testified as to the pain and suffering that they endured with the loss of their father. They testified as to the immense void left in their lives in growing up without their father. Each child recounted, in painful detail, their reaction to the event.

According to Dr. Edwards, the impact on the Plaintiff and her children is severe, permanent, and current in their minds today, like an open wound. At the time of Anderson's murder, his children were, from oldest to youngest: Gary, 15; Marc, 11; Lee, 8; and Bonnie, 5 ½ years of age. The youngest of the Anderson children, Bonnie Anderson, testified as to her visits to Cuba throughout her career as a reporter. She was able to visit her father's grave during her first visit to the island as a journalist in 1979. She testified as to her shock, agony and despair in finding, during her second visit as a journalist in 1998, that her father's grave had been desecrated and his remains discarded.

Plaintiff has requested damages for pain and suffering. Florida law allows for the award of money damages for pain and suffering. *The Civil Liability Act* as amended in 1996 specifically provides "for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7)." The Court heard compelling evidence in this case to justify a substantial award for pain and suffering. While some Courts may be able to distinguish the "pain and suffering" between one child and another, the testimony of each child in this case outlined such unique suffering as to each, the Court finds it impossible to say that one child suffered more than another. Accordingly, compensatory damages for pain and suffering are hereby awarded in the amount of:

15

$7 Million to Mrs. Dorothy Anderson

$5 Million to Mr. Gary Anderson

$5 Million to Mr. Marc Anderson

$5 Million to Ms. Lee Anderson

$5 Million to Ms. Bonnie Anderson

V.     Punitive Damages (Exempted)

At the conclusion of this trial, Plaintiff moved this Court to consider the issue of punitive damages against the Defendant. Plaintiff has now withdrawn that request, and concedes that such damages are exempted under *The Foreign Sovereignty Immunities Act,* § 1606. This section reads, in relevant part " . . . but a foreign state **except for an agency or instrumentality thereof shall not be liable for punitive damages.**" (Emphasis supplied). While the Republic of Cuba would be vicariously liable for an award of punitive damages against an agent or instrumentality of said foreign state, those agents or instrumentalities would have to be named. Plaintiff did not, in this case, bring suit against any named agent or instrumentality of the Cuban government, but only directly against the Republic of Cuba itself. This ruling does not bar any valid future claim against an agent or instrumentality that the Plaintiff may bring.

VI.     Judgement

It is, hereby, ORDERED AND ADJUDGED that judgement is hereby granted on behalf of Plaintiff, Dorothy Anderson McCarthy, as the Personal Representative of the Estate of Howard Frederick Anderson and against the Defendant, the Republic of Cuba as follows:

A TRUE COPY
CERTIFICATION ON LAST PAGE

21164 PG 2483

Economic loss $40 Million dollars

Pain and suffering $27 Million dollars

for a total in compensatory damages of $67 Million dollars. The sum execution may issue

forthwith against the Defendant, the Republic of Cuba and against any of their assets wherever

situated. This Court will retain jurisdiction to enforce this judgment or any matters pertaining

thereto.

DONE and ORDERED at the Circuit Court of the Eleventh Judicial Circuit in Miami-

Dade County, Florida this _17th_ day of April, 2003.


*Ellen Leesfield*

Ellen Leesfield
Circuit Court Judge


cc: Republic of Cuba
    Scott W. Leeds, Esq.
    Fernando J. Zulueta, Esq.

APR 14 2004

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. APR 14 2004 AD 20____
HARVEY RUVIN, Clerk of Circuit and County Courts

Deputy Clerk _Marshall_

0380

21164 PG 2484

EXHIBIT "B"



D by ___ D.C.

FEB 0 2 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

DOROTHY ANDERSON McCARTHY,          CASE NO. 04-21153-CIV-KING
as Personal Representative
of the estate of Howard
Anderson,

      Plaintiff,

vs.

THE REPUBLIC OF CUBA,

      Defendant.

_____/

### FINAL DEFAULT JUDGMENT

THIS CAUSE comes before the Court upon Plaintiff's Motion for Final Default Judgment, filed January 27, 2005.

### I.  PROCEDURAL BACKGROUND

On May 27, 2004, Plaintiff filed her Complaint pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 <u>et seq.</u> The Complaint's sole count is an action of debt on a state court judgment entered on April 17, 2003, for the Plaintiff in the amount of sixty-seven ($67) million dollars. The judgment was entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County in <u>Dorothy Anderson McCarthy v. The Republic of Cuba</u>, Case No. 01-28628 CA 04. The state court judgment arose from the extrajudicial torture and killing of Plaintiff's late husband, Howard Anderson, by The Republic of Cuba.

On January 4, 2005, Plaintiff filed an application with the

Clerk of Court to enter default against Defendant. According to the application, on or about May 27, 2004, process was served on Defendant by registered mail, pursuant to 28 U.S.C. § 1608(a)(3), sent to the Minister of Foreign Relations of The Republic of Cuba. After more than thirty (30) days had passed with no answer, on or about July 22, 2004, Plaintiff attempted to serve process on Defendant by sending the documents to the United States Department of State pursuant to 28 U.S.C. § 1608(a)(4). On November 22, 2004, Plaintiff received notice from the Department of State that it served The Republic of Cuba through the U.S. Interests Section of the Embassy of Switzerland in Havana. On January 11, 2005, with no answer from Defendant, the Clerk of Court entered the Defendant's default in the above-styled case.

On January 20, 2005, pursuant to the Court's responsibility under Rule 55 of the Federal Rules of Civil Procedure to ensure that Plaintiff is entitled to the relief sought, the Court ordered Plaintiff to provide the legal basis for filing a new lawsuit in federal court based on a state court judgment, rather than simply registering a record of the judgment. On January 27, 2005, Plaintiff filed her responsive brief, which argues that jurisdiction exists under the FSIA and she has satisfied the elements of an action on a debt; namely, a judgment and proof the judgment has not been satisfied.

2

## II.  **DISCUSSION**

To establish a right a default judgment under the FSIA, a

plaintiff is required "to establish entitlement to relief by

providing satisfactory evidence as to each element of the claims

upon which relief was sought." Compania Interamericana Export-

Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951

(11th Cir. 1996).  In the instant case, Plaintiff's Complaint has

one count, an action upon a judgment, which requires that

Plaintiff prove (1) there is an outstanding judgment and (2) that

the defendant has not paid the judgment.  See Crane v. Nuta, 26

So. 2d 670, 671-72 (Fla. 1946).

Plaintiff has submitted evidence of an outstanding judgment

by filing a copy of the Final Judgment of the Circuit Court of

the Eleventh Judicial Circuit in and for Miami-Dade County in the

case of Dorothy Anderson McCarthy v. The Republic of Cuba, Case

No. 01-28628 CA 04.  (Complaint at Exh. A.)  The Full Faith and

Credit Act, 28 U.S.C. § 1738, provides that:

> The records and judicial proceedings of any court of
> any such State, Territory or Possession, or copies
> thereof, shall be proved or admitted in other courts
> within the United States and its Territories and
> possessions *by the attestation of the clerk and seal of
> the court annexed,* if a seal exists, *together with a
> certificate of a judge of the court that the said
> attestation is in proper form.*

(emphasis added).  Further, Rule 44(a)(1) of the Federal Rules of

civil procedure provides that:

> An official record kept within the United States, or

3

any state, . . . when admissible for any purpose, may
be evidenced by an official publication thereof or by a
copy attested by the officer having the legal custody
of the record, or by the officer's deputy, and
accompanied by a certificate that such officer has the
custody.   The certificate may be made by a judge of a
court of record of the district or political
subdivision in which the record is kept, authenticated
by the seal of court, or may be made by any public
officer having a seal of office and having official
duties in the district or political subdivision in
which the record is kept, authenticated by the seal of
the officer's office.

See, e.g., AMFAC Distrib. Corp. v. Harrelson, 842 F.2d 304 (11th

Cir. 1988); Hazen Research, Inc. v. Omega Minerals, Inc., 497

F.3d 151 (5th Cir. 1974).  Because the Final Judgment filed with

this Court was certified by the Miami-Dade Circuit Court judge,

certified by the Miami-Dade Clerk of Court, and the Miami-Dade

seal is affixed, under the Full Faith and Credit Act and Rule

44(a)(1), this Court finds that Plaintiff obtained a final

judgment from the Miami-Dade Circuit Court against The Republic

of Cuba in the amount $67 million, based on the extrajudicial

torture and killing of Howard Anderson.

Plaintiff has also submitted evidence, namely affidavit

testimony, that The Republic of Cuba has failed to satisfy any

part of the final judgment, and the entire amount of the judgment

remains outstanding.   (Declaration of Dorothy Anderson McCarthy.)

Of course, as The Republic of Cuba has defaulted, Plaintiff's

assertions and evidence are unrebutted.   Accordingly, the Court

finds that Plaintiff's final judgment, in its entirety, is

4

unsatisfied. <u>See</u> <u>Alejandre v. The Republic of Cuba</u>, 996 F. Supp 1239 (S.D. Fla. 1997) (King, J.) ("Because Cuba has presented no defense, the Court will accept as true Plaintiffs' uncontroverted factual allegations.").

### III.   CONCLUSION

Accordingly, after a careful review of the record, and the court being otherwise fully advised, it is ORDERED and ADJUDGED that judgment is hereby granted on behalf of Plaintiff, Dorothy Anderson McCarthy, as the Personal Representative of the Estate of Howard Frederick Anderson, and against the Defendant, The Republic of Cuba, in the amount of sixty-seven ($67) million dollars.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 2nd day of February, 2005.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:  ***Counsel for Plaintiff***
Joseph A. DeMaria, Esq.
Bryan Thomas West, Esq.
TEW CARDENAS LLP
Four Seasons Tower
1441 Brickell Avenue
15th Floor
Miami, Florida 33131-3407
Facsimile: (305) 536-1116

5

**_Defendant_**
The Republic of Cuba
By serving the Minister of Foreign Relations
Felipe Perez Roque
Calzada No. 360, Esquina AG
Vedado, Havana, Cuba

6

EXHIBIT "C"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 04-21153-CIV-KING/O'SULLIVAN

2005 FEB 1⸬ ℙℳ 2: 51

ℂℒℰℝℕ U. ⸬ ⸬ ⸬ ⸬
S.D. ⸬ ⸬ ⸬ ⸬

DOROTHY ANDERSON McCARTHY,
as Personal Representative of the estate of
Howard Anderson

    Plaintiff

v.


THE REPUBLIC OF CUBA

    Defendant
_____/


### CLERK'S NOTICE OF SERVICE


    In accordance with Federal Rules of Civil Procedure Rule 4, and/or 28 U.S.C. § 1602 et seq.,
the Clerk certifies that on this 14th day of February , 2005, documents have been mailed via certified
mail to:


Defendant: The Republic of Cuba

Felipe Perez Roque

Minister of Foreign Relations

Clazada No. 360, Esquina AG

Vedado, Havava, Cuba


Article number: 7003 1010 0004 4837 1090

    DONE at the Federal Courthouse Square, Miami, Florida, this 14th day of February, 2005.

CLARENCE MADDOX

Court Administrator • Clerk of Court

By: _____
         Deputy Clerk

c:    U.S. District Judge KING
     All counsel of record

ID by [signature] D.C.

FEB 02 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

DOROTHY ANDERSON McCARTHY,
as Personal Representative
of the estate of Howard
Anderson,

CASE NO. 04-21153-CIV-KING

      Plaintiff,

vs.

THE REPUBLIC OF CUBA,

      Defendant.

_____/

## FINAL DEFAULT JUDGMENT

THIS CAUSE comes before the Court upon Plaintiff's Motion for Final Default Judgment, filed January 27, 2005.

### I.   PROCEDURAL BACKGROUND

On May 27, 2004, Plaintiff filed her Complaint pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. The Complaint's sole count is an action of debt on a state court judgment entered on April 17, 2003, for the Plaintiff in the amount of sixty-seven ($67) million dollars. The judgment was entered by the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County in Dorothy Anderson McCarthy v. The Republic of Cuba, Case No. 01-28628 CA 04. The state court judgment arose from the extrajudicial torture and killing of Plaintiff's late husband, Howard Anderson, by The Republic of Cuba.

On January 4, 2005, Plaintiff filed an application with the

Clerk of Court to enter default against Defendant. According to
the application, on or about May 27, 2004, process was served on
Defendant by registered mail, pursuant to 28 U.S.C. § 1608(a)(3),
sent to the Minister of Foreign Relations of The Republic of
Cuba. After more than thirty (30) days had passed with no
answer, on or about July 22, 2004, Plaintiff attempted to serve
process on Defendant by sending the documents to the United
States Department of State pursuant to 28 U.S.C. § 1608(a)(4).
On November 22, 2004, Plaintiff received notice from the
Department of State that it served The Republic of Cuba through
the U.S. Interests Section of the Embassy of Switzerland in
Havana. On January 11, 2005, with no answer from Defendant, the
Clerk of Court entered the Defendant's default in the above-
styled case.

On January 20, 2005, pursuant to the Court's responsibility
under Rule 55 of the Federal Rules of Civil Procedure to ensure
that Plaintiff is entitled to the relief sought, the Court
ordered Plaintiff to provide the legal basis for filing a new
lawsuit in federal court based on a state court judgment, rather
than simply registering a record of the judgment. On January 27,
2005, Plaintiff filed her responsive brief, which argues that
jurisdiction exists under the FSIA and she has satisfied the
elements of an action on a debt; namely, a judgment and proof the
judgment has not been satisfied.

2

## II.  DISCUSSION

To establish a right a default judgment under the FSIA, a plaintiff is required "to establish entitlement to relief by providing satisfactory evidence as to each element of the claims upon which relief was sought."  Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996).  In the instant case, Plaintiff's Complaint has one count, an action upon a judgment, which requires that Plaintiff prove (1) there is an outstanding judgment and (2) that the defendant has not paid the judgment.  See Crane v. Nuta, 26 So. 2d 670, 671-72 (Fla. 1946).

Plaintiff has submitted evidence of an outstanding judgment by filing a copy of the Final Judgment of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County in the case of Dorothy Anderson McCarthy v. The Republic of Cuba, Case No. 01-28628 CA 04.  (Complaint at Exh. A.)  The Full Faith and Credit Act, 28 U.S.C. § 1738, provides that:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and possessions *by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.*

(emphasis added).  Further, Rule 44(a)(1) of the Federal Rules of civil procedure provides that:

> An official record kept within the United States, or

3

> any state, . . . when admissible for any purpose, may
> be evidenced by an official publication thereof or by a
> copy attested by the officer having the legal custody
> of the record, or by the officer's deputy, and
> accompanied by a certificate that such officer has the
> custody.  The certificate may be made by a judge of a
> court of record of the district or political
> subdivision in which the record is kept, authenticated
> by the seal of court, or may be made by any public
> officer having a seal of office and having official
> duties in the district or political subdivision in
> which the record is kept, authenticated by the seal of
> the officer's office.

See, e.g., AMFAC Distrib. Corp. v. Harrelson, 842 F.2d 304 (11th

Cir. 1988); Hazen Research, Inc. v. Omega Minerals, Inc., 497

F.3d 151 (5th Cir. 1974).  Because the Final Judgment filed with

this Court was certified by the Miami-Dade Circuit Court judge,

certified by the Miami-Dade Clerk of Court, and the Miami-Dade

seal is affixed, under the Full Faith and Credit Act and Rule

44(a)(1), this Court finds that Plaintiff obtained a final

judgment from the Miami-Dade Circuit Court against The Republic

of Cuba in the amount $67 million, based on the extrajudicial

torture and killing of Howard Anderson.

Plaintiff has also submitted evidence, namely affidavit

testimony, that The Republic of Cuba has failed to satisfy any

part of the final judgment, and the entire amount of the judgment

remains outstanding.  (Declaration of Dorothy Anderson McCarthy.)

Of course, as The Republic of Cuba has defaulted, Plaintiff's

assertions and evidence are unrebutted.  Accordingly, the Court

finds that Plaintiff's final judgment, in its entirety, is

4

unsatisfied. <u>See</u> <u>Alejandre v. The Republic of Cuba</u>, 996 F. Supp 1239 (S.D. Fla. 1997) (King, J.) ("Because Cuba has presented no defense, the Court will accept as true Plaintiffs' uncontroverted factual allegations.").

### III. CONCLUSION

Accordingly, after a careful review of the record, and the court being otherwise fully advised, it is ORDERED and ADJUDGED that judgment is hereby granted on behalf of Plaintiff, Dorothy Anderson McCarthy, as the Personal Representative of the Estate of Howard Frederick Anderson, and against the Defendant, The Republic of Cuba, in the amount of sixty-seven ($67) million dollars.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 2nd day of February, 2005.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:  **_Counsel for Plaintiff_**
     Joseph A. DeMaria, Esq.
     Bryan Thomas West, Esq.
     TEW CARDENAS LLP
     Four Seasons Tower
     1441 Brickell Avenue
     15th Floor
     Miami, Florida 33131-3407
     Facsimile: (305) 536-1116

5

**_Defendant_**
The Republic of Cuba
By serving the Minister of Foreign Relations
Felipe Perez Roque
Calzada No. 360, Esquina AG
Vedado, Havana, Cuba