# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOROTHY ANDERSON McCARTHY, as
Personal Representative of the estate of
Howard Anderson,

        Plaintiff,

against

THE REPUBLIC OF CUBA,

        Defendant,

and

JPMORGAN CHASE BANK, N.A.

        Garnishee-Respondent.

_____/

JPMORGAN CHASE BANK, N.A.

        Garnishee-Respondent and
        Third-Party Petitioner,

against

JANET RAY WEININGER, Individually and
as Administrator, Executor, Personal
Representative, and/or Guardian of the Estate
of her father, Thomas Willard Ray;
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C., in Its
Capacity as Alleged Fiduciary in Respect of
the Rabinowitz Boudin Special Account (as
defined in the Third-Party Petition); BANCO
NACIONAL DE CUBA, EMPRESA
CUBANA EXPORTADORA DE
ALIMENTOS Y PRODUCTOS VARIOS
(CUBAEXPORT), EMPRESA DE
TELECOMUNICACIONES
INTERNACIONALES DE CUBA

Case Number: 18 MS 0302
(Transcript of Registered Judgment No.
05-1005)
For a Case in the
Southern District of Florida
Case No. 04-2115-Civ-King



RECEIVED
NOV 15 2005
U.S.D.C. S.D. N.Y.
CASHIERS

(EMTELCUBA), EMPRESA DE
TELECOMUNICACIONES DE CUBA, S.A.
(ETECSA), EMPRESA DE
RADIOCOMUNICACION Y DIFUSION DE
CUBA (RADIOCUBA), AT&T CORP.,
CUBAN AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, JOHN W.
SNOW, SECRETARY OF THE
TREASURY, In His Official Capacity,

                Adverse Claimants-
                Respondents,

and

DOROTHY ANDERSON MCCARTHY, as
Personal Representative of the Estate of
Howard Anderson,

                Plaintiff and Adverse
                Claimant-Respondent.
_____/

DOROTHY ANDERSON McCARTHY, as
Personal Representative of the estate of
Howard Anderson,

                Petitioner/Counter-Petitioner,
against

JPMORGAN CHASE BANK, N.A., and
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.

                Garnishees-Respondents.

and

2

JANET RAY WEININGER, Individually and
as Administrator, Executor, Personal
Representative, and/or Guardian of the Estate
of her father, Thomas Willard Ray;

        Adverse Claimant-Respondent.

_____/

## PLAINTIFF/ADVERSE CLAIMANT-RESPONDENT/COUNTER-PETITIONER DOROTHY ANDERSON MCCARTHY'S ANSWER AND AFFIRMATIVE DEFENSES TO THIRD-PARTY PETITION OF JPMORGAN CHASE BANK, N.A., COUNTER-PETITION FOR A TURNOVER PROCEEDING AND PETITION FOR DETERMINATION OF ADVERSE CLAIMS

Plaintiff/Adverse Claimant-Respondent/Counter-Petitioner Dorothy Anderson McCarthy

("Anderson McCarthy"), as the Personal Representative of the Estate of Howard Anderson, by and

through undersigned counsel, hereby files this Answer and Affirmative Defenses to the Third-Party

Petition of JPMorgan Chase Bank, N.A., brought pursuant to Fed. R. Civ. P. 22, CPLR §§ 5239 &

6221 and Section 134 of the New York Banking Law (the "Petition"). Anderson McCarthy also files

her Counter-Petition for a Turnover Proceeding and Petition to Determine Adverse claims, pursuant

to Sections 5225(b), 5227 and 5239 of the CPLR. Anderson McCarthy responds to each of the

numbered paragraphs of the Petition as follows:

1.      Anderson McCarthy admits that JPMorgan Chase Bank, N.A. ("JPM Chase") was

served with a U.S. Marshal's Writ of Execution in the above-captioned proceeding seeking to

enforce, on behalf of Anderson McCarthy, a $67 million default judgment registered in this Court

against the Republic of Cuba. Anderson McCarthy lacks knowledge sufficient to admit or deny the

allegations concerning Janet Ray Weininger ("Weininger") set forth in Paragraph 1 of the Petition.

Anderson McCarthy lacks knowledge sufficient to admit or deny whether JPM Chase has blocked

accounts in the name of any "Judgment Debtor" (as that term is defined in the Petition) but states

3

that, upon information and belief, JPM Chase holds funds which are subject to execution as being property of the Republic of Cuba and/or its agencies or instrumentalities. Anderson McCarthy admits that Anderson McCarthy seeks to execute against accounts opened for the benefit of, or to hold payments to or for the account of, the Republic of Cuba and its agencies and instrumentalities but lacks knowledge concerning JPM Chase's allegation in Paragraph 1 concerning payments to or the account of a Cuban subsidiary of a U.S. company. Anderson McCarthy admits that all of the accounts are blocked by federal regulation and that certain aspects of the propriety of execution against these accounts will be governed federal law. Anderson McCarthy lacks knowledge sufficient to admit or deny JPM Chase's allegations in the last sentence of Paragraph 1 of the Petition. Anderson McCarthy lacks knowledge sufficient to admit or deny JPM Chase's allegations in footnote 1 of the Petition.

2.    Anderson McCarthy responds that the Writ of Execution speaks for itself and denies any allegations in Paragraph 2 of the Petition which are inconsistent with the Writ of Execution.

3.    Anderson McCarthy admits that the Writ of Execution presents a potentially adverse position against the accounts held at JPM Chase but lacks knowledge sufficient to admit or deny JPM Chase's allegations in Paragraph 3 that the Writ of Execution in and of itself represents an adverse claim under Fed. R. Civ. P. 22, Section 6221 of the CPLR and/or Section 134 of the Banking Law of the State of New York, other than as to Section 5239 of the CPLR.

4.    Upon information and belief, Anderson McCarthy admits the allegations in the first sentence of Paragraph 4. Anderson McCarthy lacks knowledge sufficient to admit or deny that Weininger's claim in and of itself represents an adverse claim under Fed. R. Civ. P. 22, Section 5239 of the CPLR, Section 6221 of the CPLR and/or Section 134 of the Banking Law of the State of New

4

York. Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 4 of the Petition.

5.      Anderson McCarthy admits that Anderson McCarthy has asserted and is entitled to assert claims against certain blocked deposits at JPM Chase, but lacks knowledge sufficient to admit or deny JPM Chase's allegations that all of the other third parties referenced in Paragraph 5 may have adverse claims against one or more of the blocked deposits at JPM Chase.

6.      Anderson McCarthy states that 31 C.F.R. Part 515 speaks for itself.  Anderson McCarthy denies the allegations in Paragraph 6 to the extent that they are inconsistent with the federal regulations. Anderson McCarthy lacks knowledge sufficient to admit or deny JPM Chase's remaining allegations in Paragraph 6 of the Petition.

7.      Anderson McCarthy states that Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221, and Section 134 of the New York Banking Law speak for themselves and denies the allegations in Paragraph 7 of the Petition to the extent that they are inconsistent with the those rules and laws. Anderson McCarthy lacks knowledge sufficient to admit or deny JPM Chase's remaining allegations in Paragraph 7 of the Petition.

8.      Anderson McCarthy admits that JPM Chase purports to make certain allegations for a petition under Fed. R. Civ. P. 22, CPLR §§ 5239 and 6221 and Section 134 of the New York Banking Law.

## JURISDICTION AND VENUE IN RESPECT
## OF THE THIRD-PARTY PETITION OF JPM CHASE HEREIN

9.      Anderson McCarthy admits that this Court has jurisdiction over this proceeding. Anderson McCarthy admits that Anderson McCarthy's claims involve federal law, that Anderson

McCarthy's claims are in the nature of an action brought against a foreign state as defined in the Foreign Sovereign Immunities Act ("FSIA"), and that there is supplemental jurisdiction in this case. Anderson McCarthy states that she lacks knowledge sufficient to admit or deny all of the remaining allegations in Paragraph 9 of the Petition. Anderson McCarthy further states that the federal laws and rules of civil procedure speak for themselves.

10.      Anderson McCarthy admits the allegations in Paragraph 10.

### THE PARTIES

11.      Anderson McCarthy admits that JPM Chase is a national banking association incorporated under the laws of the United States, but lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 11.

12.      Anderson McCarthy admits that she is a judgment creditor in the above-captioned matter and that she has caused a U.S. Marshal's writ of execution to be served on JPM Chase which levied upon $67 million in blocked deposits. Anderson McCarthy admits that Anderson McCarthy may be deemed an Adverse-Claimant Respondent, but Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 12.

13.      Anderson McCarthy admits that Weininger's attempt to enforce a judgment against the Blocked Deposits pursuant to a pre-judgment attachment may be adverse to Anderson McCarthy's claims against the Blocked Deposits, but lacks knowledge sufficient to admit or deny the remaining allegations contained in Paragraph 13.

14.      Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 14.

15.     Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 15, except that, on information and belief, Anderson McCarthy admits that JPM Chase holds deposits in New York for agencies and instrumentalities of the Republic of Cuba.

16.     Anderson McCarthy admits that AT&T is a corporation organized and existing under the laws of the State of New York with its principal place of business in New Jersey. Anderson McCarthy admits, upon information and belief, that AT&T has paid funds into blocked accounts, but lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 16.

17.     Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 17.

18.     Anderson McCarthy admits the allegations of Paragraph 18 relating to the Rabinowitz firm (as defined in the Petition), but lacks sufficient knowledge to admit or deny the allegations of Paragraph 18 concerning or related to Weininger.

19.     Anderson McCarthy admits that Banco Nacional has been engaged in commercial banking activities, that Banco Nacional was also engaged in central bank activities, that Banco Nacional is an agency or instrumentality of the Republic of Cuba, and that a significant portion, if not all, of the blocked deposits held in the attorney trust account opened by the Rabinowitz Firm are held for the benefit of Banco Nacional. Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 19.

20.     Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 20.

21.     Anderson McCarthy admits that EMTELCUBA was organized under Cuban law, has its principal offices in Cuba, and was involved in the operation of the Cuban telephone system.

Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 21, except she admits that EMTELCUBA may fall within the definition of an "agency or instrumentality" of the Cuban government, within the meaning of the FSIA.

22.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 22.

23.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 23.

## THE BLOCKED DEPOSITS

24.    Anderson McCarthy admits the allegation in Paragraph 24 that she has sought to enforce her judgment against blocked deposits at JPM Chase. Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 24.

25.    Anderson McCarthy admits the allegations in the first and third sentences of Paragraph 25. Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in the second sentence of Paragraph 25.

26.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations of Paragraph 26.

27.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 27.

28.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 28.

29.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 29.

8

30.    Anderson McCarthy admits the allegations of Paragraph 30, except that she lacks knowledge sufficient to admit or deny the allegations concerning the dates.

31.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations of Paragraph 31.

32.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 32. Anderson McCarthy further states that EMTELCUBA would be estopped to dispute that the funds in EMTELCUBA accounts are subject to execution under the doctrines of collateral estoppel and stare decisis.

33.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 33.

34.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 34.

35.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 35.

36.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 36.

37.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 37.

## MATTERS TO BE RESOLVED IN ADVANCE OF
## ADDRESSING PLAINTIFF'S CLAIM FOR RELIEF

38.    Anderson McCarthy admits the allegations in Paragraph 38 as to those allegations concerning Anderson McCarthy but lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 38.

39.    Anderson McCarthy admits that Anderson McCarthy may be entitled to certain of the relief sought in the above-captioned proceeding, but Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 39 as they relate to Weininger.

40.    Anderson McCarthy admits that interested parties should have an opportunity to be heard but lacks knowledge as to whether all of the persons and entities identified by JPM Chase are "interested parties."

41.    Anderson McCarthy admits the allegations in the first and third sentences of Paragraph 41, but denies that the pre-judgment order of attachment is valid. Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in the second and fourth sentences of Paragraph 41.

42.    Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 42.

43.    Anderson McCarthy denies the allegations in Paragraph 43 to the extent that such allegations imply that Anderson McCarthy has not satisfied the requirements for the issuance of a writ of execution pursuant to the FSIA and TRIA. Specifically, Anderson McCarthy states that: (1) Anderson McCarthy does possess a judgment against a terrorist party based on an act of terrorism and for which a terrorist party is not immune under 28 U.S.C. §1605(a)(7); (2) Anderson McCarthy's

10

judgment is solely for compensatory damages for which a terrorist party has been adjudged liable; (3) Anderson McCarthy has served her pleadings upon the foreign state in the manner provided for service by 28 U.S.C. § 1608(a) and (c); (4) Anderson McCarthy served her petition for execution upon the Republic of Cuba; (5) Anderson McCarthy has already received an adjudication that a reasonable period of time has elapsed following entry of her judgment and she has perfected service of her judgment under 28 U.S.C. § 1608(e); (6) the property against which Anderson McCarthy seeks to execute is, upon information and belief, property of the Republic of Cuba or of its agencies and instrumentalities; (7) the provisions of 18 U.S.C. § 1611(b) do not apply to Banco Nacional de Cuba; and (8) Anderson McCarthy is not seeking to execute against any assets that are subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations. Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 43 as they relate to Weininger.

44.      Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in the first sentence of Paragraph 44. Anderson McCarthy states that the phrase "as set forth above" is vague and ambiguous and therefore cannot admit or deny such allegations. Anderson McCarthy further states that, in addition to TRIA or federal common law, the law under the FSIA is applicable with regard to execution upon the blocked property.

45.      Anderson McCarthy admits that JPM Chase is and has been prohibited from transferring any blocked property held by it in which the Republic of Cuba, or one of its agencies, instrumentalities, or blocked nationals has an interest, but lacks information sufficient to admit or deny the remaining allegations of Paragraph 45.

11

46.     Anderson McCarthy admits that certain blocked deposits consist of funds credited to an attorney trust account established in part to hold funds recovered in litigation brought on behalf of Banco Nacional which is believed to be an agency or instrumentality of the Republic of Cuba but denies, upon information and belief, that such property would be immune from execution pursuant to Section 1611 of the FSIA.

47.     Anderson McCarthy lacks knowledge sufficient to admit or deny the allegations in Paragraph 47, except that she admits, upon information and belief, that funds were paid for the benefit of agencies and instrumentalities of the Republic of Cuba.

48.     Anderson McCarthy admits that Anderson McCarthy's claim against the Blocked Deposits is an adverse claim, but lacks knowledge sufficient to admit or deny JPM Chase's allegations in Paragraph 48 that the Writ of Execution in and of itself represents an adverse claim under Fed. R. Civ. P. 22, Section 6221 of the CPLR and/or Section 134 of the Banking Law of the State of New York, other than as to Section 5239 of the CPLR. Anderson McCarthy admits that Weininger's attempt to enforce a judgment against the Blocked Deposits may be adverse to Anderson McCarthy's claim against same, but Anderson McCarthy lacks knowledge sufficient to admit or deny that Weininger's claim in and of itself represents an adverse claim under Fed. R. Civ. P. 22, Section 5239 of the CPLR, Section 6221 of the CPLR and/or Section 134 of the Banking Law of the State of New York. Anderson McCarthy lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 48 of the Petition.

49.     Anderson McCarthy lacks information sufficient to admit or deny the allegations in Paragraph 49.

12

50.      Anderson McCarthy lacks information sufficient to admit or deny the allegations in Paragraph 50.

51.      Anderson McCarthy lacks information sufficient to admit or deny the allegations in Paragraph 51. To the extent that JPM Chase alleges that it is entitled to deposits held by agencies or instrumentalities of the Republic of Cuba, Anderson McCarthy denies such allegations.

In response to the "WHEREFORE" clause of the Petition, Anderson McCarthy is without knowledge sufficient to admit or deny the allegations in subparagraphs (a) and (b), except that it admits that this Court should determine that an order of turnover should be issued in favor of Anderson McCarthy in respect of the property of the Republic of Cuba and the agencies and instrumentalities thereof held by JPM Chase or any other proper garnishee, and that Anderson McCarthy has priority over all other potential creditors. In addition, Anderson McCarthy is without knowledge sufficient to admit or deny the allegations contained in subparagraphs (1) through (13) of the "WHEREFORE" clause, and does not respond to any of those allegations which allege legal conclusions to which no response is required. Anderson McCarthy denies that JPM Chase would be entitled to an award of costs and attorneys fees.

## FIRST AFFIRMATIVE DEFENSE

1.      Third-Party Petitioner JPM Chase has, in whole or in part, failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.      Third-Party Petitioner JPM Chase has attempted to improperly join unnecessary parties in this proceeding.

## COUNTER-PETITION FOR TURNOVER AND PETITION TO DETERMINE ADVERSE CLAIMS PURSUANT TO N.Y. CPLR §§5225(b), 5227 AND 5239

Counter-Petitioner Anderson McCarthy (hereinafter "Counter-Petitioner"), as Personal Representative of the Estate of Howard Anderson, by and through her undersigned attorneys, respectfully counterclaims and petitions this Court for an Order directing the turnover of certain assets and to determine adverse claims. In support thereof, Counter-Petitioner alleges as follows:

### Introduction and Procedural History

1.      This is a Petition for a Turnover Proceeding and to Determine Adverse Claims pursuant to Fed. R. Civ. P. 69(a) and N.Y. CPLR §§5225(b), 5227 and 5239.

2.      Counter-Petitioner is the Plaintiff/Judgment Creditor in an action in the U.S. District Court for the Southern District of Florida (Case. No. 04-21153-CIV-KING/O'SULLIVAN)(hereinafter referred to as the "Florida federal action"). The Florida federal action was brought to enforce a state court judgment entered in favor of Counter-Petitioner against the Republic of Cuba, pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §1602 et seq. (the "FSIA"), which awarded Counter-Petitioner compensatory damages in the amount of $67,000,000 based upon the extra-judicial torture and killing of Counter-Petitioner's late husband, Howard Anderson, by the Republic of Cuba.

3.      On February 2, 2005, the U.S. District Court for the Southern District of Florida issued a Final Default Judgment (the "Judgment") in favor of Counter-Petitioner in the amount of $67,000,000. After having secured the judgment in federal court in the Southern District of Florida, Counter-Petitioner properly complied with the service provisions of the Foreign Sovereign Immunities Act, as set forth in 28 U.S.C. §§ 1608(e) and 1608(a)(1) - (4).

14

4.      Specifically, on February 14, 2005, pursuant to Section 1608(a)(3) of the FSIA, the Clerk served the Judgment upon the Republic of Cuba via certified mail. On March 16, 2005, when service by mail through §1608(a)(3) had not been achieved, the Republic of Cuba was served through diplomatic channels, as required by §1608(a)(4) of the FSIA. On May 6, 2005, the Department of State delivered to the Clerk of the Court in the Florida federal action confirmation that the Judgment was served on the Republic of Cuba on April 13, 2005.

5.      On May 25, 2005, after properly serving the Republic of Cuba with the Judgment, Counter-Petitioner registered the Judgment with the U.S. District Court for the Southern District of New York. Once registered, the Judgment had "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner," pursuant to 28 U.S.C. §1963.

6.      On August 4, 2005, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, and Article 52 of the N.Y. CPLR, Counter-Petitioner petitioned the U.S. District Court for the Southern District of New York for the immediate issuance of a writ of execution. Counter-Petitioner complied with all applicable notice requirements of the FSIA and New York law.

7.      On August 23, 2005, this Court entered an Order for Immediate Issuance of Writ of Execution, ordering the Clerk of the Court to issue a writ of execution to be served by the United States Marshal for the purpose of enforcing Counter-Petitioner's registered judgment in the sum of $67,000,000. Subsequently, the Clerk of the Court issued Writs of Execution to be served upon Respondent-Garnishees JPMORGAN CHASE BANK, N.A., ("JPM Chase") and the law firm of RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C. ("the Rabinowitz firm") for levy upon specific personal property in the custody or possession of JPM Chase and/or the Rabinowitz firm in which the judgment debtor has an interest, pursuant to N.Y. CPLR §5232(a).

15

In addition, Counter-Petitioner served JPM Chase and the Rabinowitz firm with Restraining Notices, pursuant to N.Y. CPLR §5222.

8.      On September 2, 2005, the United States Marshal served the writs of execution upon garnishees JPM Chase and the Rabinowitz firm, thereby levying upon specific personal property in the custody or possession of the garnishees in which the Republic of Cuba has an interest.  The two Writs of Execution have not been returned by the Marshal.

9.      Counter-Petitioner has met all conditions precedent to bringing this special proceeding for the turnover of the personal property in the custody or possession of the garnishees in which the Judgment Debtor has an interest, pursuant to N.Y. CPLR §5225(b) and 5227, and the entire amount of the Judgment remains unsatisfied.  Counter-Petitioner will provide proper notice to the judgment debtor, the Republic of Cuba, in conjunction with the filing of this Petition, pursuant to §5225(b) and 5227.

### Jurisdiction and Venue

10.     This matter arises from the original subject matter jurisdiction of the federal courts pursuant to 28 U.S.C. § 1330(a) because it involves a non-jury civil action against a foreign state.

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as a civil action arising under the constitution, laws or treaties of the United States, as it involves issues under the Foreign Sovereign Immunities Act and federal law.  This Court also has supplemental subject matter jurisdiction over this Petition pursuant to 28 U.S.C. §1367(a) because the U.S. District Court for the Southern District of Florida had original jurisdiction over the action, and this turnover proceeding, which is an attempt to execute on the $67,000,000 underlying judgment, which is now

registered in the Southern District of New York, is so related to the claims in the federal actions that it forms part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is proper in this Court pursuant to N.Y. CPLR §5221(a)(2), because the judgment was registered in the U.S. District Court for the Southern District of New York, and pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the personal property at issue in this matter is located within this District.

## The Parties

13.    Counter-Petitioner, Mrs. Dorothy Anderson McCarthy, the Personal Representative of the Estate of Howard Anderson, is a citizen of the State of Florida.

14.    Garnishee-Respondent JPM Chase, upon information and belief, is a national banking association incorporated under the laws of the United States which maintains offices in New York, New York.  Upon further information and belief, JPM Chase is named in its capacity as the holder of deposits that contain blocked assets located at 1 Chase Manhattan Plaza, New York, NY, 10005, against which the Counter-Petitioner has directed the U.S. Marshal to levy.  JPM Chase is a proper garnishee pursuant to N.Y. CPLR §5201(c).

15.    Garnishee-Respondent Rabinowitz, upon information and belief, is a professional corporation organized and existing under New York State law which maintains its offices in New York, New York.  The Rabinowitz firm is named in this action in its capacity as a fiduciary that maintains an attorney trust account at JPM Chase which contains blocked assets against which

17

Counter-Petitioner has directed the U.S. Marshal to levy. The Rabinowitz firm is a proper garnishee pursuant to N.Y. CPLR §5201(c)(2).[1]

16.    Respondent and Adverse Claimant JANET RAY WEININGER, (hereinafter "Weininger") both individually and in her capacity as administrator, executor, personal representative and/or guardian of the estate of Thomas Willard Ray, is named as an adverse claimant in this proceeding. Weininger claims that she has an interest in the same blocked assets being held by JPM Chase. Counter-Petitioner seeks a determination that her rights in the blocked assets are superior to what rights, if any, Weininger may have to the same assets.

17.    Judgment Debtor The Republic of Cuba is a sovereign state within the meaning of the FSIA with headquarters based, upon information and belief, in Havana, Cuba. The Republic of Cuba has agents for the purpose of service of process located at Calzada No. 360, Esquina AG, Vedado, Havana, Cuba, through the Minister of Foreign Affairs, Felipe Perez Roque. The Republic of Cuba is a state sponsor of terrorism, within the meaning of the FSIA, and a terrorist party, within the meaning of Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, Title II, §201(a), Nov. 26, 2002, 116 Stat. 2337 ("TRIA").

### Proceeding for Turnover of Personal Property in Which the Judgment Debtor Has an Interest
(against JPM Chase and the Rabinowitz firm)

18.    Pursuant to Rule 69(a), Fed. R. Civ. P., and N.Y. CPLR §§5225(b) and 5227, Counter-Petitioner brings this special proceeding against Garnishee-Respondents JPM Chase and

---

[1] N.Y. CPLR §5201(c)(2) expressly provides that a proper garnishee for any property or fund controlled by a fiduciary shall be the fiduciary. In addition, the N.Y. Code of Professional Responsibility, DR 9-102, 22 N.Y.CRR §1200.46(b) and New York case law specifies that an attorney holding funds belonging to a client in the attorney's trust account is a fiduciary.

the Rabinowitz firm, seeking turnover to the Counter-Petitioner/Judgment Creditor of monies in which the Republic of Cuba has an interest, which are currently held in blocked accounts at JPM Chase. Specifically, Counter-Petitioner seeks execution on blocked assets of a terrorist party pursuant to Section 201(a) of TRIA, which provides that "notwithstanding any other provisions of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim . . . for which [it] is not immune under section 1605(a)(7) of titles 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." Pub. L. 107-297, Title II, §201(a), Nov. 26, 2002, 116 Stat. 2337.

19.    Counter-Petitioner requests that this Court order turnover, into Counter-Petitioner's possession, of the property contained in the following accounts, up to the amount which would satisfy the Judgment:

    a.    All blocked accounts in the name or for the benefit of "Banco Nacional de Cuba;"

    b.    The blocked account in the name of "AT&T Long Lines Dept. Account": Account No. G00875;

    c.    The blocked account in the name of "BLK A/C - Empresa de Telecomunicaciones de Cuba": Account No. 395-507995;

    d.    The blocked account in the name of "Rabinowitz Boudin SPL for the AC of the Republic of Cuba & Its Agencies BLK ACCT.": Account No. 092-037119; and

    e.    Any other accounts containing funds in which the Judgment Debtor, the Republic of Cuba, or any of its agencies or instrumentalities, has an interest.

20.      Upon information and belief, all of these accounts have been blocked by the United States government pursuant to 31 C.F.R. Part 515, the Cuban Assets Control Regulations, and/or pursuant to section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)), which allow the Department of the Treasury to block property in which the Republic of Cuba, its agencies or instrumentalities, or its nationals have an interest.  Counter-Petitioner seeks execution on those blocked assets of the Republic of Cuba (or its agencies or instrumentalities),  which is a "terrorist party" within the meaning of Section 201 of TRIA.

21.      Upon information and belief, Counter-Petitioner submits that the property contained in the specific accounts at JPM Chase is not immune from execution, as follows:

a.      "Banco Nacional de Cuba" Accounts - Banco Nacional de Cuba is an instrumentality of the Cuban government, organized and existing under the laws of Cuba.  At certain times since its inception, Banco Nacional de Cuba has engaged in commercial banking activities. In addition, Banco Nacional de Cuba was engaged in certain central bank activities.  The property contained in the accounts held for Banco Nacional de Cuba is properly subject to execution under Section 201 of TRIA, as it is the property of an agency or instrumentality of a terrorist party, the Republic of Cuba.  The property contained in the Banco Nacional de Cuba accounts is not immune from execution pursuant to 28 U.S.C. §1611, because Banco Nacional de Cuba has not only engaged in central bank activities, but has a long history of engaging in commercial activities, and, upon information and belief, the funds contained in the Banco Nacional de Cuba accounts are unrelated to central bank activities.

b.      "AT&T Longlines" Accounts - AT&T is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New Jersey.  Upon

20

information and belief, AT&T has deposited monies owed to Cuban entities for providing international telecommunications services into accounts that had been established as blocked accounts at JPM Chase. The property contained in the accounts in the name of AT&T Longlines is properly subject to execution under Section 201 of TRIA, because, upon information and belief, some or all of the funds are the property of an agency or instrumentality of a terrorist party, the Republic of Cuba.

c.      "Empresa de Telecomunicaciones de Cuba" Accounts - Empresa de Telecomunicaciones de Cuba ("EMTELCUBA") is a juridical entity organized under Cuban law with its principal place of business in Havana, Cuba. EMTELCUBA is an agency or instrumentality of the Republic of Cuba, within the meaning of the FSIA and TRIA. Upon information and belief, in 1992, AT&T Corporation used the services of EMTELCUBA in linking international telephone calls to the Cuban telephone system. AT&T made payments for this commercial service into an account at JPM Chase named "BLK A/C - Empresa de Telecomunicaciones de Cuba, c/o AT&T Corp." (Account No. 395-50795). That account has been blocked by the United State government. The property contained in the Empresa de Telecomunicaciones de Cuba, c/o AT&T Corp. account is properly subject to execution under Section 201 of TRIA as it is the property of an agency or instrumentality of a terrorist party, the Republic of Cuba.

d.      "Rabinowitz Boudin SPL" Account - the Rabinowitz firm is a professional corporation organized and existing under the laws of the State of New York, which maintains offices in New York, New York. Upon information and belief, the blocked JPM Chase account in the name of the Rabinowitz firm is an attorney trust account, opened for the deposit of any monetary damages recovered in lawsuits commenced in the courts of the United States on behalf of the Republic of

Cuba, Banco Nacional de Cuba, which is an instrumentality of the Republic of Cuba, and other Cuban juridical entities owned or controlled by the Republic of Cuba. In prior litigation, the Rabinowitz firm has intended and understood that the Rabinowitz Boudin SPL account is a fiduciary account required to be maintained by the Rabinowitz firm in accordance with their professional obligations as attorneys with funds entrusted to them. The property contained in the accounts in the name of Rabinowitz, Boudin SPL is properly subject to execution under Section 201 of TRIA, as it is the property of an agency or instrumentality of a terrorist party, the Republic of Cuba. Counter-Petitioner seeks turnover of the funds contained in this account directly from the Rabinowitz firm because, as a fiduciary, that firm is the proper garnishee under New York law.

22.     In sum, the property upon which execution and turnover are being sought by Counter-Petitioner is subject to, and not immune from, to execution pursuant to the requirements of the FSIA and TRIA as follows:

        a.      The Republic of Cuba is a "terrorist party" within the meaning of Section 201 of TRIA.

        b.      The Judgment upon which this Petition is based involved a claim based upon an act of terrorism (the extra-judicial torture and murder of Counter-Petitioner's husband in Cuba) for which a terrorist party, the Republic of Cuba, is not immune, pursuant to 28 U.S.C. §1605(a)(7);

        c.      The amount of the Judgment, $67,000,000, upon which execution is sought, is for compensatory damages only;

        d.      A copy of the Judgment was served upon the Republic of Cuba in accordance with the requirements of TRIA and the FSIA. In addition, notice of the

execution was also properly served upon the Republic of Cuba, and notice of this Petition is being properly served upon the Republic of Cuba as well;

e.    The monies contained in the accounts which are the subject of this Petition are "blocked assets" within the meaning of Section 201(d)(2) of TRIA. The blocked assets are property of the Judgment Debtor, the Republic of Cuba, or an agent or instrumentality thereof, and as such, the Judgment Debtor has a clear interest in the property. Pursuant to Section 201(a) of TRIA, Counter-Petitioner is entitled to recover from the blocked assets of an agency or instrumentality of the Judgment Debtor, or the Judgment Debtor itself.

f.    The property contained in the Banco Nacional de Cuba accounts is not immune from execution pursuant to 28 U.S.C. §1611 to the extent that the funds at issue are not related to any functions of a central bank, and the funds are otherwise subject to execution against Banco Nacional de Cuba as an agency or instrumentality of the Republic of Cuba.

g.    Upon information and belief, the blocked property against which execution is sought in this Petition is not subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, and therefore no waiver of the provisions of Section 201(a) of TRIA can be instituted by the President of the United States.

WHEREFORE, Dorothy Anderson McCarthy petitions this Court for entry of a judgment directing JPM Chase and the Rabinowitz firm to effectuate the immediate turnover to her of funds in which the Republic of Cuba, or any agency or instrumentality thereof, has an interest, including

23

those blocked assets contained in the following accounts located at JPMorgan Chase Bank, N.A.,

up to the amount of the Judgment and any interest or applicable fees, and for any other relief this

Court deems just and proper, including an award of costs:

    a.    Blocked accounts in the name or for the benefit of "Banco Nacional de Cuba;"

    b.    The blocked account in the name of "AT&T Long Lines Dept. Account": Account No. G00875;

    c.    The blocked account in the name of "BLK A/C - Empresa de Telecomunicaciones de Cuba": Account No. 395-507995; and

    d.    The blocked account in the name of "Rabinowitz Boudin SPL for the AC of the Republic of Cuba & Its Agencies BLK ACCT.": Account No. 092-037119.

    e.    Any other accounts containing funds in which the Judgment Debtor, the Republic of Cuba, or any of its agencies or instrumentalities, has an interest.

## PROCEEDING FOR DETERMINATION OF ADVERSE CLAIMS
(against Janet Ray Weininger)

23.    Pursuant to N.Y. CPLR §5239, Counter-Petitioner seeks a declaration that the rights

of the Counter-Petitioner to the property contained in the accounts listed above are superior to any

rights Adverse Claimant Weininger may have with regard to the accounts.

24.    Counter-Petitioner incorporates herein and re-alleges the procedural history described

above, resulting in a Judgment in the Southern District of New York in the sum of $67,000,000, an

Order for Immediate Issuance of a Writ of Execution, and levies by the Marshal upon JPM Chase

and the Rabinowitz firm on September 2, 2005.

25.    Upon information and belief, Weininger has obtained a Final Default Judgment in

Florida state court in the amount of approximately $22 million in compensatory damages.

26.    On August 1, 2005, Weininger obtained an Order of Attachment in the Supreme Court of the State of New York, New York County, prior to the resolution of her motion for summary judgment in lieu of complaint, which seeks the domestication of the Florida default judgment.

27.    The Order of Attachment directs the Sheriff, at any time before final judgment, to levy upon the property in which the defendants therein, including the Republic of Cuba, have an interest. This property involves the same blocked accounts upon which Counter-Petitioner seeks turnover in this proceeding. The Order also requires that Weininger move within five (5) days after levy, upon such notice as the court shall direct to the defendants and garnishees, for an Order Confirming the Order of Attachment. Upon information and belief, on August 4, 2005, Weininger delivered the attachment order to the Sheriff.

28.    Counter-Petitioner has properly levied upon the blocked accounts at JPM Chase, and properly levied upon the Rabinowitz firm, having performed all conditions precedent, and having properly notified and served the Judgment Debtor pursuant to the requirements of the N.Y. CPLR and the FSIA.

29.    Upon information and belief, Weininger has failed to properly serve papers concerning the attachment, including the order to show cause for the attachment and the Attachment Order itself, pursuant to New York law and the FSIA. The purported service methods employed by Weininger were improper.

30.    In addition, upon information and belief, Weininger has not and did not properly move within five (5) days after levy for an Order Confirming the Order of Attachment. Pursuant to N.Y. CPLR §6211(b), Weininger's failure to move for a confirmation order within the time

25

prescribed causes the Order of Attachment, and any levy thereunder, to have no further effect. As such, Weininger does not have a valid levy on any of the blocked assets listed above, and can have no priority over the Counter-Petitioner's claims, putting aside the issue that the applicable laws do not provide for such pre-judgment attachment.

31.     In addition, upon information and belief, Weininger failed to provide timely and proper notice of the attachment proceedings to the Judgment Debtor as required both by the court and the FSIA, thus entailing that the attachment proceedings were *ex parte*.

32.     Recently, Weininger filed a Motion to Amend the Attachment Order, alleging a clerical error pursuant to Fed. R. Civ. P. 60(a), and seeking to have the Order changed from an *ex parte* order to an order with notice, causing the requirement of obtaining a confirmation order to be removed. Upon information and belief, because the errors sought to be corrected affect the substantive rights of the parties, and because the requirements for an *ex parte* order were not met, Weininger's attempted amendment of the Attachment Order must fail.

33.     Upon information and belief, Weininger did not give the Republic of Cuba notice of the attachment proceedings. In particular, the Permanent Mission to the United Nations is not authorized to accept process for Cuba. In addition, documents sent by Weininger to Cuba were sent after the hearing on the attachment.

34.     Upon information and belief, Weininger has also failed to levy against the proper garnishee with regard to the Rabinowitz Boudin SPL account. New York law expressly provides that a proper garnishee for any property or fund controlled by a fiduciary is be the fiduciary itself. The proper garnishee with regard to the Rabinowitz Boudin SPL account, which is an attorney trust account, is the Rabinowitz firm. Upon information and belief, Weininger has not levied upon the

Rabinowitz firm, and Weininger therefore has no priority over Counter-Petitioner's claims with regard to the Rabinowitz Boudin SPL account at JPM Chase.

35.    Weininger's attempted pre-judgment attachment also fails under the FSIA. Contrary to the conclusions of the court in the August 1, 2005 Attachment Order, pursuant to New York law, Weininger's Florida state court default judgment is not entitled to full faith and credit, because New York does not recognize default judgments from sister states. Absent a valid New York judgment, upon information and belief, Weininger's claims against the blocked accounts listed above can only be pre-judgment in nature.

36.    The only federal statute that allows for pre-judgment attachment under these circumstances is §1610(d) of the FSIA, which requires Weininger to prove that the Republic of Cuba has explicitly waived its immunity from attachment prior to judgment. Upon information and belief, Weininger cannot show that the Republic of Cuba has in any way waived its immunity from pre-judgment attachment. Weininger's attachment, and subsequent levy, should therefore be vacated for failure to comply with the requirements of 28 U.S.C. §1610(d). §201 of TRIA does not excuse Weininger from complying with the specific requirements of §1610(d) for pre-judgment attachments.

37.    Because Respondent Weininger does not have a valid attachment or levy under both New York state and federal law, Respondent Weininger cannot have priority over the Counter-Petitioner's claims.

38.    At the present juncture, it is unclear whether Weininger has complied with the FSIA service requirements in the underlying Florida action.

WHEREFORE Counter-Petitioner Dorothy Anderson McCarthy hereby counterclaims and petitions this Court for a declaration that Counter-Petitioner's claims to any and all accounts located at JPM Chase and/or controlled by the Rabinowitz firm have priority over any claims raised by Janet Ray Weininger.

Dated: November 14, 2005.

TEW CARDENAS LLP

By: _____

Joseph A. DeMaria, Esq. (JD 5668)
Bryan T. West, Esq. (BW 8739)
Counsel for Respondent/Counter-Petitioner
Dorothy Anderson McCarthy
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Phone: 305 536-1112

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via mail this

14th day of November, 2005 on the following:

DAVIS POLK & WARDWELL
James L. Kerr, Esq.
450 Lexington Avenue
New York, NY 10017
Phone: 212/450-4000
     *Counsel for JPMorgan Chase*

GREENBERG TRAURIG, LLP
c/o James W. Perkins, Esq.
MetLife Building
200 Park Avenue
New York, NY 10166
Phone: 212/801-9200
     *Counsel for Weininger*

RABINOWITZ BOUDIN STANDARD
  KRINSKY & LIEBERMAN, P.C.
Michael Krinsky, Esq.
740 Broadway at Astor Place, 5th Floor
New York, NY 10003-9518
Phone: 212/254-1111

SIDLEY AUSTIN BROWN & WOOD
Steven M. Bierman
Lynn A. Dummett
James J. Regan
787 Seventh Avenue
New York, NY 10019
Phone: 212/839-5300
     *Counsel for AT&T Corp. and Cuban
American Telephone and Telegraph Corp.*

BANCO NACIONAL DE CUBA
Aguilar 456
entre Lamparilla y Aranguran
Havana, Cuba

Aguilar #411
entre Amargura Y Obrapia Habana Vieja
Ciudad de la Habana, Cuba

EMPRESA CUBANA EXPORTADORA DE
ALIMENTOS Y PRODUCTOS VARIOS
(CUBAEXPORT)
Cálle 23, No. 55
entre Infanta y P
8 vo. Piso
Vedado Ciudad de la Habana, Cuba

EMPRESA DE TELECOMINICACIONES
INTERNACIONALES DE CUBA
(EMTELCUBA)
Avenida Independecia e/19 de Mayo y Aranguren
2 do Piso
Plaza de la Revolucion
Havana, Cuba

Zanja Street No. 855
Havana Cuba

Apartado 6466
La Habana, Cuba

Plaza de la Revolucion
Ciudad de la Habana, Cuba

EMPRESA DE TELECOMUNICACIONES
DE CUBA SA (ETECSA)
Egido No. 610 entre Gloria y Apodaca
Habana Vieja
Ciudad de La Habana, Cuba
Havana Cuba

EMPRESA DE RADIOCOMUNICACION
Y DIFUSION DE CUBA (RADIOCUBA)
Avenida Independencia e/19 de Mayo y
Aranguren
2 do Piso
Plaza de la Revolucion
Havana, Cuba

SECRETARY OF THE TREASURY
John W. Snow
U.S. Department of Treasury
Office of Chief Counsel
Office of Foreign Assets Control
1500 Pennsylvania Avenue, N.W.
Annex Building
Washington, DC 20220

REPUBLIC OF CUBA
Minister of Foreign Relations
Felipe Perez Roque
Calzada No. 360, Esquina AG
Vedado, Havana Cuba

_____
Bryan T. West

@PFDesktop\::ODMA/MHODMA/DMS_NT;MIAMI;445564;1

30