UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY ANDERSON, as the Personal
Representative of the Estate of Howard
Anderson,

              Plaintiff,

against

AT&T CORP., CUBAN AMERICAN
TELEPHONE AND TELEGRAPH
COMPANY, and JPMORGAN CHASE
BANK, N.A.,

              Garnishees.

_____/

Case Number: 07 Civ. 7974 (VM)

**GARY ANDERSON'S AND ANA MARGARITA MARTINEZ'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Gary Anderson, as the Personal Representative of the Estate of Howard Anderson, and Ana

Margarita Martinez (hereinafter referenced jointly as "Petitioners") submit this joint memorandum,

along with the accompanying joint Rule 56.1 Statement, in support of their Motion for Summary

Judgment concerning the turnover of certain funds that have been deposited by AT&T Corp.

("AT&T") at JPMorgan Chase Bank, N.A. ("JPM Chase") relating to funds payable to the Republic

of Cuba for tax liabilities. For purposes of this Motion, the amount of the funds at issue is

$37,999.03 as of March 31, 2008, plus any additional funds for tax liabilities that have accrued and

will have accrued as of the date of the turnover sought in this Motion.[1]

---

[1] As explained below, Petitioners also respectfully request that AT&T provide the Court with an
updated calculation of the accrued tax liabilities for the Court to incorporate into a final turnover
order.

**Introduction**

This matter is based on a Petition for a Turnover Proceeding pursuant to Fed. R. Civ. P. 69(a) and N.Y. CPLR §§5225(b) and 5227 in order to partially satisfy the outstanding portion of the federal judgment obtained by the Anderson family against the Republic of Cuba (the "Anderson Judgment"). (D.E. 1.) This Motion is relatively straightforward as it is essentially a continuation of the matter that this Court addressed in Weininger v. Castro, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) (Marrero, J.).[2] Indeed, the present case deals with the same judgment on behalf of the Estate of Howard Anderson that was at issue in Weininger (which was only partially satisfied by the turnover order entered in the Weininger case), the primary legal issues in the present case were addressed by this Court in Weininger, and, with the exception of Ms. Martinez, all of the parties here participated in the Weininger matter.[3]

The narrow issue here is that, after the turnover in the Weininger case, AT&T has disclosed the presence of certain additional funds located in accounts at JPM Chase in New York, which are subject to garnishment (and which continue to accrue additional amounts). In responding to the U.S. Marshal (which had served a writ of execution on AT&T based on the Anderson Judgment), AT&T described these funds by stating that "AT&T's wholly-owned subsidiary, Cuban American Telephone and Telegraph Company ('CATT'), has accrued a tax liability to the Republic of Cuba

---

[2] In the Weininger case, the Anderson family was originally represented by Dorothy Anderson McCarthy (Gary Anderson's mother and the wife of decedent Howard Anderson). Mrs. Anderson McCarthy passed away in late 2006. After her death, Mr. Anderson was appointed as the Personal Representative of the Estate of Howard Anderson by the Miami-Dade County Circuit Court.

[3] The presence of Ms. Martinez in the present case is not significant in terms of making this case different from the Weininger matter, particularly since, as explained herein, Ms. Martinez and Mr. Anderson are cooperating with each other in their execution efforts, and she does not oppose the relief sought by Mr. Anderson herein.

. . . for Cuban income taxes that have accrued . . . on the accumulated gross interest income attributable to certain funds contained in two blocked accounts at JPMorgan Chase Bank." (West Declaration, Exhibit D.)[4] AT&T identified these accounts as the "AT&T Long Lines Account" and the "Florida Land Sale Account." (Id.) AT&T further stated that "AT&T has booked CATT's liability for the income taxes due from CATT to the Republic of Cuba against CATT's funds contained in the blocked AT&T Long Lines and Land Sale Accounts." (Id.) As these are funds payable to the government of the Republic of Cuba, Mr. Anderson seeks the turnover of these funds (hereinafter referred to as the "Tax Funds") to further satisfy a portion of the Anderson Judgment.

In Weininger, this Court ordered the turnover of blocked funds owed by CATT to the Republic of Cuba for taxes which were on deposit at JPM Chase in the AT&T Long Lines Account. See Weininger, 462 F. Supp. 2d at 496-97. The assets at issue in the present case are additional tax liabilities that began to accrue in the AT&T Long Lines Account upon the previously-ordered turnover as well as other funds allocated to tax liabilities that have been in the Land Sale Account (which apparently contains tax funds that existed both prior to and after the Weininger turnover).

Petitioners basically seek the same relief that was ordered in the Weininger turnover such that all of the Tax Funds that have accrued, and that are to accrue up until the time that this Court orders a turnover pursuant to this Motion, be turned over to Mr. Anderson to satisfy a portion of the Anderson Judgment (the outstanding portion of which exceeds $20 million).

---

[4] The Declaration of Bryan T. West is being filed simultaneously herewith.

3

**Argument**

## I.    THE SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted where there is no genuine issue of material fact to be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'"  Id. at 327 (citation omitted).  The non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Similarly, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

## II.    MR. ANDERSON IS ENTITLED TO TURNOVER OF THE TAX FUNDS.

Section 201(a) of the federal Terrorism Risk Insurance Act (TRIA) provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of a terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged.

See Pub. L. 107-297, Title II, § 201(a), Nov. 26, 2002.  In addressing Section 201(a) of TRIA, this

4

Court noted that the determination of Section 201(a) applicability involves four elements: (1) a person has obtained a judgment against a terrorist party; (2) the judgment is either (a) for a claim based on an act of terrorism, or (b) for a claim for which a terrorist party is not immune under Section 1605(a)(7); (3) the assets are "blocked assets" within the meaning of TRIA; and (4) execution is sought only to the extent of any compensatory damages. Weininger, 462 F. Supp. 2d at 479.[5]  The Anderson Judgment satisfies these criteria.

In the Weininger proceeding, this Court already determined the first two TRIA elements in favor of the Anderson Judgment (i.e., the Anderson Judgment is a judgment against a terrorist party, and the judgment is based on a claim for which the terrorist party is not immune under Section 1605(a)(7)). See Weininger, 462 F. Supp. 2d at 479-80. As JPM Chase, AT&T, and CATT were all parties in the Weininger case and these issues were already litigated and necessarily determined by this Court, these matters are conclusively established for purposes of the present case pursuant to principles of collateral estoppel. See Mishkin v. Ageloff, 299 F. Supp. 2d 249, 252 (S.D.N.Y. 2004) (Marrero, J.) ( "For collateral estoppel to apply, the court must find that (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.").

The remaining two TRIA elements are also satisfied here.  First, the assets in question are "blocked assets." As this Court noted in Weininger regarding the moneys in the accounts at JPM

---

[5] This Court also noted that an additional consideration may be whether the blocked assets are those of an "agency or instrumentality" of a terrorist party. Weininger, 462 F. Supp. 2d at 479.  That factor does not apply in this case as Mr. Anderson is seeking the turnover of the direct assets of the Republic of Cuba and not those of an agency or instrumentality.

Chase, "[t]here is no dispute here that the accounts at issue fall within this definition." Weininger, 462 F. Supp. 2d at 480. Indeed, JPM Chase has acknowledged in its Answer to the turnover petition and in its Amended Third-Party Petition that the accounts at issue are blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515. (See D.E. 21.) Likewise, in responding to the U.S. Marshal upon being served with the Writ of Execution, AT&T confirmed that the Tax Funds are in accounts that "are blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. §§ 515.101 et seq." (See West Declaration, Exhibit D.) Second, the Anderson Judgment is for compensatory damages. See Weininger, 462 F. Supp. 2d at 480-81. In excess of $23 million in compensatory damages, including accrued interest on the Anderson Judgment, remains outstanding. (West Declaration, ¶ 5.)

As this Court has noted, "TRIA § 201(a) permits execution against funds held by or owed to the Republic of Cuba." Weininger, 462 F. Supp. 2d at 477. Funds allocated to taxes payable to the Republic of Cuba constitute funds "owed to the Republic of Cuba." Indeed, the prior turnover in the Weininger case involved, in part, the turnover of blocked funds owed by CATT to the Republic of Cuba for taxes which were on deposit at JPM Chase. See Weininger, 462 F. Supp. 2d at 496-97. The same issue is presented in this case.[6]

As for the procedural implementation of the turnover itself, Section 5225(b) of the N.Y. CPLR authorizes the Court to order the turnover of personal property in the possession of a person in which a judgment debtor has an interest. See Weininger, 462 F. Supp. 2d at 499. In this Court's Section 5225(b) analysis in Weininger, this Court concluded that JPM Chase was a "'person in

---

[6] As in Weininger, Mr. Anderson is not seeking the recovery of any funds that constitute assets of AT&T or CATT. Other than the Tax Funds, none of the other funds in the AT&T Long Lines Account or the Land Sale Account should be touched as part of this turnover.

possession or custody of money or other personal property' in which the evidence has demonstrated the judgment debtors have an interest." Id. As the Court further noted:

> In addition, some evidence indicates that Cuba itself has an interest in the property-namely, in the AT & T Long Lines Account, CATT has indicated that some deposits in that account consist of amounts owed by CATT to the Republic of Cuba. The judgment debtors are "entitled to possession of such property" except for the blocked nature of the accounts. However, the U.S. Department of Justice has indicated that "[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the Office of Foreign Assets Control." (DOJ Ltr.) Accordingly, under CPLR § 5525(b) such property may be used to satisfy Plaintiffs' judgments.

Id. As the issue here is identical, the same analysis applies to the present turnover. The AT&T Long Lines Account and the Land Sale Account contain funds owed by CATT to the Republic of Cuba.

Alternatively, this turnover proceeding is also brought pursuant to Section 5227 of the N.Y. CPLR, which applies to "any person who it is shown is or will become indebted to the judgment debtor." Pursuant to that section, "the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment." N.Y. CPLR § 5227. As the Tax Funds constitute a debt owed to the judgment debtor, Section 5227 would also support a turnover of the Tax Funds to Mr. Anderson.

Accordingly, as there is no disputed issue of material fact, and as Mr. Anderson is entitled to a turnover of the Tax Funds as a matter of law, the turnover of the Tax Funds should be ordered.[7]

---

[7] Finally, it should be noted that the Republic of Cuba has been served with Mr. Anderson's turnover petition, and the Republic of Cuba has not made an appearance in these proceedings.

### III.    AT&T AND CATT HAVE STIPULATED TO THE TURNOVER RELIEF SOUGHT IN THIS MOTION.

On May 5, 2008, Mr. Anderson, Ms. Martinez, CATT, and AT&T entered into a Stipulation of Agreement and [Proposed] Order Between AT&T Corp., Cuban American Telephone and Telegraph Company, Ana Margarita Martinez, and Gary Anderson (the "Stipulation").  (See D.E. 41.)  This Court "so ordered" the Stipulation on May 6, 2008.  (D.E. 41 at 11.)

For purposes of the present Motion, the Stipulation is important in three relevant respects. ***First***, the Stipulation notes that the amount of the accrued tax liability was $37,999.03 as of March 31, 2008.  (See D.E. 41 at 2.)  ***Second***, the parties have stipulated that the amounts at issue in this turnover are the $37,999.03, as well as the additional amounts that have accrued and will accrue after March 31, 2008, up until the date of any turnover ordered by the Court in this proceeding.  ***Third***, in consideration of the waiver of certain claims by Ms. Martinez and Mr. Anderson, "AT&T and CATT agree that they will not assert any objection to any motion for summary judgment, or any request for turnover filed or asserted by Martinez and/or Anderson in the above-captioned Turnover Proceeding as to the Tax Funds, the granting of judgment pursuant to any such motion or request for turnover as to the Tax Funds, or the subsequent enforcement of a judgment based thereon."  (D.E. 41 at 7.)

Other than JPM Chase (which has identified those persons and entities which it has determined are the potential "adverse claimants" to the Tax Funds), Ms. Martinez, Mr. Anderson, CATT and AT&T are the ***only persons or entities*** that have appeared in these proceedings (the only other "adverse claimant" identified by JPM Chase being the Republic of Cuba, which has failed to

8

appear in these proceedings despite being served).[8]  As all of those appearing persons and entities

which have been identified by JPM Chase are agreeable to the relief requested herein, there is no

issue of disputed fact in terms of turning over the funds.

## IV.    MS. MARTINEZ DOES NOT OPPOSE THE TURNOVER OF THE TAX FUNDS TO MR. ANDERSON.

JPM Chase joined Ms. Martinez in this action by asserting a Third-Party Petition identifying

"adverse claimants" or "adverse claimant-respondents." (D.E. 21 at 8-9.) In a turnover proceeding,

a court may determine the rights of an adverse claimant. See N.Y. CPLR §§ 5225(b), 5227. As Ms.

Martinez has been joined as a party, she has the right to have her rights determined as part of this

turnover proceeding.

In response to the Third-Party Petition, in addition to her assertion that she was not opposing

the turnover of the Tax Funds to Mr. Anderson, Ms. Martinez asserted: "To the extent that any funds

which are the subject of the turnover action are not subject to execution by Anderson, any such funds

representing the tax liabilities at issue should be turned over to Martinez pursuant to any writ of

execution by Martinez covering these assets." (D.E. 26 at 8.) Ms. Martinez has, in fact, served a

writ of execution on each of JPM Chase and AT&T which levy on the Tax Funds. (See West

Declaration, ¶ 16.)

Ms. Martinez has satisfied TRIA. Ms. Martinez has obtained judgments for compensatory

damages against the Republic of Cuba based on acts of terrorism for which the Republic of Cuba is

---

[8]  In a prior interpleader petition filed in this case, JPM Chase had identified a Florida judgment creditor named Jeanette Hausler. (See D.E. 10.)  The judgment creditors in the Hausler case have stipulated that they are not seeking to execute against the Tax Funds and that they do not oppose the turnover of the Tax Funds to Mr. Anderson. (See D.E. 22, 23.)  In fact, even before Petitioners filed the Hausler stipulation with this Court, JPM Chase had dropped Hausler as a potential adverse claimant in JPM Chase's Amended Third-Party Petition. (See D.E. 21.)

not immune under 28 U.S.C. § 1605(a)(7). (See West Declaration, ¶ 11 (and D.E. 1 of Case No. 07 CV 6607 (VM).) As indicated in the docket in the Martinez case (Case No. 07 CV 6607 (VM)), the Republic of Cuba has been served with the Martinez Judgment as well as her motion for issuance of a writ of execution. (See West Declaration, ¶ 14.) The Republic of Cuba has not responded.

Moreover, in this case, JPM Chase served the Republic of Cuba with a Notice of Suit and Amended Third-Party Petition (D.E. 38, 39, 42) in which JPM Chase advised the Republic of Cuba that it was giving the Republic of Cuba notice based "upon the Writ of Execution issued upon the application of Adverse-Claimant Respondent Gary Anderson, and upon the Writ of Execution issued upon the application of Plaintiff and Adverse-Claimant Ana Margarita Martinez." Therefore, the Republic of Cuba clearly has notice that this proceeding could result in the turnover of the Tax Funds either to Mr. Anderson or Ms. Martinez. The Republic of Cuba has not responded to JPM Chase's Notice of Suit.

As noted herein, Ms. Martinez does not oppose the turnover of the Tax Funds to Mr. Anderson, and therefore the entire amount of the Tax Funds should be turned over to Mr. Anderson. In the event that any portion of the Tax Funds is not turned over to Mr. Anderson, judgment should be entered for JPM Chase to turn such funds over to Ms. Martinez.

## V. PETITIONERS REQUEST THAT THE ORDER GRANTING THIS MOTION PROVIDE THAT AT&T AND CATT PROVIDE AN UPDATED CALCULATION OF THE BALANCE OF THE TAX FUNDS AS OF THE TIME OF TURNOVER.

The latest information that Petitioners possess concerning the amount of the Tax Funds is the balance as of March 31, 2008: $37,999.03. (See D.E. 41 at 2.) By their nature, the Tax Funds continually accrue (i.e., the accounts in question continually accrue interest, and the interest accrues a tax liability owed to the Republic of Cuba). As stated in the Stipulation with AT&T and CATT,

the amount of the Tax Funds at issue in this Motion are those that "accrue up to the date of any turnover order entered by the Court in the Turnover Proceeding [i.e., the present case]."

In light of the foregoing, Petitioners request that any turnover order issued by this Court provide an opportunity for AT&T and CATT to submit to the parties and to the Court the information as to the amount of the Tax Funds as of a date certain for the turnover to occur, so that the Court may incorporate that amount in the final judgment.

## Conclusion

For the foregoing reasons, Petitioners respectfully request that summary judgment be entered in their favor for the turnover of the Tax Funds to Mr. Anderson and that this Court grant such further relief that this Court deems just and proper.

**TEW CARDENAS LLP**

By: s/Bryan T. West__
Joseph A. DeMaria  (JD 5668)
jad@tewlaw.com
Bryan T. West (BW 8739)
btw@tewlaw.com
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Phone: 305 536-1112
Fax: 305-536-1116
*Counsel for Gary Anderson, as the Personal Representative of the Estate of Howard Anderson*, and *Ana Margarita Martinez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 21st day

of August, 2008, on the following:

**VIA ECF**:

James L. Kerr, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
*Counsel for JPMorgan Chase*

Lynn A. Dummett, Esq.
SIDLEY AUSTIN
787 Seventh Avenue
New York, NY 10019
*Counsel for AT&T Corp. and Cuban American Telephone and Telegraph Co.*

**VIA DHL:**

REPUBLIC OF CUBA
Minister of Foreign Relations
Felipe Perez Roque
Calzada No. 360, Esquina AG
Vedado, Havana, Cuba

s/Bryan T. West

@PFDesktop\::ODMA/MHODMA/DMS_NT;Miami;511470;1

12